(No. 12477.—Rule discharged.)

THE PEOPLE *ex rel.* Wilton U. Hutchison *et al.* Relators, *vs.* WILBUR H. HICKMAN, Respondent.

*Opinion filed October 23, 1920.*

1. STATE'S ATTORNEYS—*purpose of provision that State's attorney shall not prosecute civil action.* The purpose of the provision of section 6*a* of the State's Attorneys act that a State's attorney shall not prosecute a civil action depending on the same facts upon which a criminal prosecution may rest is to prevent any influence upon the discharge of the duties of the State's attorney by reason of personal interest.

2. SAME—*State's attorney cannot at any time prosecute civil suit depending on same facts as criminal prosecution.* The provision of section 6*a* of the State's Attorneys act that a State's attorney shall not be employed in any civil suit depending upon the same facts upon which a criminal prosecution shall depend, prevents such employment not only during the prosecution of the criminal case but the prohibition must be held to apply with equal force after the conclusion of the criminal action.

3. DISBARMENT—*when interest of State's attorney in civil suit is not ground for disbarment.* The action of a State's attorney in becoming employed in a civil suit growing out of a criminal prosecution is not ground for his disbarment, where the language of the statute prohibiting such employment had not been construed at that time as applying after the conclusion of the criminal proceeding.

4. SAME—*when State's attorney will not be disbarred for bringing prosecution for perjury.* A State's attorney who believes that perjury has been committed in a disbarment proceeding against him will not be disbarred for bringing the matter to the attention of the grand jury while the disbarment proceeding is pending but his action in so doing is subject to criticism.

THOMPSON, FARMER and DUNCAN, JJ., specially concurring.

INFORMATION to disbar.

EMERY ANDREWS, and R. G. REAL, for relators.

GEORGE B. GILLESPIE, and EDWARD C. CRAIG, (GEORGE M. GILLESPIE, JAMES W. CRAIG, JR., DONALD B. CRAIG, and FRED H. KELLY, of counsel,) for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

Relators, upon leave of court being had, filed an information against the respondent charging unprofessional conduct in fourteen separate counts. The respondent thereafter moved to dismiss various counts of the information and refer the information to the grievance committee of the State Bar Association. Rulings on motions and cross-motions presented were reserved and the information was referred to the State Bar Association, which body referred the same to its grievance committee. Upon hearing before said committee a report was made by it to this court finding that the proof did not sustain the charges contained in the information and recommending that the same be dismissed. The relators thereafter dismissed all of the counts in the information except the third count and asked leave to file certain additional counts, which leave was denied except as to the second additional count. The cause was thereafter referred to a commissioner, Charles G. Briggle, master in chancery of the circuit court of Sangamon county, on the third original count and the second additional count, with directions to the commissioner to take evidence and report the same to this court.

The third original count of the information charges, in substance, that during the pendency and prosecution of the indictment for murder against William Mings, returned by the grand jury of Edgar county and thereafter taken on change of venue to Coles county, and prior to the conviction of Mings for said offense, the respondent, while acting as State's attorney of Edgar county and in charge of the prosecution, sought and accepted employment from the widow of Moody Sturgill, the man alleged to have been killed by Mings, to bring suit against Mings for civil damages, and that suit was brought on the 26th day of May, 1914, and was thereafter settled for the sum of $4500. Of that amount $1000 was paid out as attorneys' fees, part

of which was paid to the respondent, and it is charged that the action of respondent in that behalf was unprofessional, unethical and in violation of section 6a of the act relating to State's attorneys, which provides that the State's attorney "shall not be retained or employed except for the public in a civil case depending upon the same state of facts on which a criminal prosecution shall depend," and that he was thereby guilty of malfeasance in his office as an attorney and as State's attorney of Edgar county. To this count respondent answered, admitting that he was State's attorney of Edgar county and was in charge of the prosecution referred to in said count, and that after the defendant in the murder case withdrew his motion for a new trial, and after judgment and sentence had been entered against him on a verdict of the jury finding him guilty of manslaughter, suit was brought in the circuit court of Coles county by the widow of Sturgill, and that respondent, as one of the attorneys for her, signed the *præcipe* for summons, but denied that the *præcipe* was filed or summons issued or suit begun until after judgment of conviction had been entered in the circuit court of Coles county and sentence pronounced upon Mings and he had been placed in the custody of the sheriff to be transported to prison. Respondent also denied that at any time during the pendency of the criminal proceeding, or at any time prior to the entry of conviction and sentence, he had been employed in said civil suit; that the civil suit was filed on the 26th day of May, for the reason that it would have been impossible thereafter to have secured service on Mings in said county.

The second additional count charges, in substance, that the respondent, for the purpose of attempting to force relator Hutchison to withdraw his charges in this proceeding, secured the indictment of Hutchison on the charge of perjury, and that he wrongfully sought the appointment as a special State's attorney of Stewart W. Kincaid, a member of the Edgar county bar, knowing that Kincaid was preju-

diced against Hutchison, and that after the indictment had been returned respondent sought to compromise the differences between himself and Hutchison by means of which the disbarment proceedings would be dropped. Respondent answering, denied that he had any knowledge of prejudice on the part of Kincaid against Hutchison, but averred, on the contrary, on information and belief, that no such prejudice exists; denied that he made any attempt to compromise matters between himself and Hutchison; denied any knowledge of what took place in the jury room further than that he testified before the grand jury. Respondent admits that he procured the drawing of the indictment against Hutchison, but insists that he did believe and does believe that Hutchison was guilty of perjury in signing certain affidavits in the information which he filed in this cause and that it was his duty to see that the charge of perjury be laid before the grand jury.

A large volume of testimony was taken before the commissioner concerning these charges, and it is evident to anyone reading this record that there is much ill-feeling existing between Hutchison and respondent.

Respondent contends as to the third original count, that the law places no duty on the State's attorney to prosecute a suit where a change of venue is taken to another county, and therefore there was no legal or moral obligation resting upon him to avoid acceptance of employment in a civil suit depending on the same facts as contemplated by the statute; that said statute relates only to the prosecution of criminal cases in his own county. Section 5 of the act relating to State's attorneys provides: "The duties of each State's attorney shall be, first, to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in his county, in which the people of the State or county may be concerned." The respondent contends that because under section 29 of the Venue act a cause coming on change of venue "shall be

proceeded in and determined in all things, as well before as after judgment, as if it had originated in such court," no duty rested upon him, as State's attorney of Edgar county, to assist in the prosecution of the criminal case in Coles county. Without indicating what the holding of this court should be if this were a case where that question properly arose, respondent should not be heard in a proceeding of this character to urge such a defense, for the reason, first, that his answer admits and the facts show that he did go into Coles county and assist in the management and active prosecution of the case as State's attorney; and second, by acting as such he assumed the duties and responsibilities devolving upon him as such official.

But it is urged on behalf of respondent that the words "shall depend," in section 6a of the State's Attorneys act, show that the legislature intended that the act should not apply where the people's case had been concluded, and that the facts here do not show that respondent became so interested or engaged in the cause until after the defendant in the murder case had withdrawn the motion for a new trial filed by him and judgment had been entered and sentence pronounced under it. There is evidence in the record tending to show that respondent had had some conversation pertaining to the civil suit, but it does not establish that he was retained as counsel in the case prior to the completion of the criminal proceeding. While section 6a has been construed as affecting the right of individuals to employ counsel to assist the State's attorney in the trial of a criminal case, the provision in question here has not been construed. It was evidently the purpose of the legislature in enacting said provision to prevent any influence upon the discharge of the duties of the State's attorney by reason of personal interest on his part, through employment of individuals interested in the prosecution of a criminal charge, to prosecute a civil action depending on the same facts upon which such prosecution may rest.

If this statute is applicable during the pendency of a criminal prosecution,—and counsel for respondent admit that it is,—it would also appear that the reasons actuating the legislature in prohibiting such employment during the pendency of the criminal prosecution apply with equal force after the conclusion of the criminal prosecution. If it be said that a State's attorney may be employed in a civil case after the conclusion of a criminal prosecution, such a holding invites evasion of the spirit of the law, which prohibits his being interested in the prosecution of a civil case based on the facts of the criminal case. A State's attorney who has been given to understand that he will be employed to prosecute a civil case after the conclusion of the criminal case may be influenced by improper motives of self-interest to secure a conviction of a citizen charged with crime or to prevent such conviction. Such a holding would likewise open the door for criminal prosecutions in aid of civil actions. We are of the opinion that it was the purpose and intent of the legislature that a State's attorney should not at any time be interested or employed in a civil case which it might reasonably be presumed would grow out of and depend upon the facts upon which the criminal prosecution depends.

While the evidence in the record does not show with the degree of clearness required in cases of this character that respondent has violated section 6a of the statute or has been guilty of malfeasance in office, yet there is evidence in the record tending to show an evasion of the spirit of the statute on his part. The duty to uphold the law in its spirit as well as its letter rests upon all members of the bar. Particularly does this duty rest upon the State's attorneys of the State, who have a direct responsibility for upholding the spirit of the law by the prosecution of offenses against the law. Respondent contends that he did only what he thought he had the right to do, and his counsel urge that for this reason, and because of the fact that the language

of said section (which they contend is not plain) has not been heretofore construed by this court, respondent's violation of the spirit of the act, if there be such a violation, should not be ground for his disbarment. While respondent was in error concerning his right to receive employment in said case and may be justly criticised under the facts presented, the record does not show evidence justifying his disbarment under the third original count.

The record in connection with the second additional count shows that the respondent consulted with the circuit court judges of that circuit, and with others, relative to the procedure to be followed in the presentation to the grand jury of charges against the relator Hutchison that he had been guilty of perjury in signing certain affidavits in connection with the information to disbar the respondent. The record also shows that an indictment consisting of four counts was returned against Hutchison charging that he had willfully sworn falsely concerning the statement of facts set up in the sixth, seventh and eighth counts of the original information to disbar, filed herein. Much testimony was taken concerning the merits of the various counts of the original information referred to in said four counts of the indictment against Hutchison for perjury. It will, however, serve no good purpose to discuss that testimony or to follow counsel in their arguments concerning the same. The gist of the offense charged in the second additional count of the information to disbar concerns the motive of the respondent in attempting to secure the indictment of Hutchison. It cannot be doubted that it was his duty to have presented to the grand jury acts on the part of Hutchison, or anyone else, which he conscientiously believed to be acts of perjury. The grievance committee of the State Bar Association found that the charges contained in the sixth, seventh and eighth counts of the original information to disbar were not sustained and they were dismissed out of the information. If a State's attorney conscientiously be-

lieves that perjury has been committed it is not misconduct on his part to have such matter brought to the attention of the grand jury even though he is interested in the matter, provided his conduct is shown to be in good faith and free from prejudice. We do not, however, attempt to pass upon or give any opinion as to the truth of the charges made in the indictment or to indicate that a trial upon the indictment would have shown Hutchison guilty of perjury. Respondent was not justified, however, in laying the matter before the grand jury while said counts of the information were pending undetermined in this court, but it does not necessarily follow that he was guilty of unprofessional conduct or breach of duty in having the matter so presented to the grand jury, provided in doing so he in good faith exercised no control, influence or assistance in such presentation. Personal spite or prejudice on the part of the State's attorney in connection with such investigation might easily amount to unprofessional conduct on his part, and Hutchison contends that the only purpose in securing his indictment was to harass him and compel him to withdraw his charges against respondent in this court.

The record shows that the respondent went before the circuit judge, Augustus A. Partlow, who was holding court in that circuit, and explained to him that he felt that Hutchison had been guilty of perjury in swearing to certain counts of the information filed against respondent in this court, and asked his approval of respondent's request that the Attorney General send an assistant to take charge of the grand jury investigation. Failing to secure such assistant, respondent thereafter asked the circuit judge to appoint a special State's attorney to take charge of the matter before the grand jury. Upon his filing a petition therefor this was done. The record also shows that respondent suggested that the attorney appointed should reside outside the county, as most of the attorneys in Edgar county were employed in litigation in which respondent or Hutchison was

interested, but the court indicated that it would not appoint an attorney outside of Edgar county, and upon being asked to submit the name of an attorney to act in that capacity, the name of Stewart W. Kincaid was presented by respondent and the court appointed him.' It is charged that this appointment was procured in an attempt to prejudice Hutchison, for the reason, as he avers, that Kincaid was prejudiced against him. This is not borne out by the evidence. The evidence shows that at one time Kincaid represented parties who opposed Hutchison in a lawsuit. There is nothing in the evidence to indicate any reason or desire on the part of Kincaid to bring about the conviction of Hutchison on the charge of perjury. There is not a scintilla of evidence in this record that Kincaid was in any way prejudiced against or unfair to Hutchison in his acts as special prosecutor or that he bore him any ill-will.. His appointment and services are by this record shown to have been but the orderly and impartial administration of the criminal law.

Respondent admits that he had the indictment against Hutchison prepared, but testifies that the preparation of it in advance was simply in accordance with the practice in his office to prepare indictments in advance for the purpose of saving time. In this respondent is subject to criticism. While it is commendable that the time of the grand jury, and therefore the public expense, be conserved, yet by securing the appointment of a special prosecutor and giving his testimony before the grand jury respondent did all he was required to do or should do. The record shows, however, that he was guilty of no improper conduct in securing the appointment of a special prosecutor.

It is urged, however, that the indictment was procured for the purpose of securing the dismissal of the charges in this case by Hutchison. There is nothing in the evidence which bears out this charge. The record shows that attorney Frank T. O'Hair, who represented Hutchison in certain suits in which he was interested, and respondent's

counsel, Edward C. Craig, had several conversations concerning the compromise of the difficulties existing between Hutchison and respondent. There is, however, no evidence in the record of any proposition on the part of respondent or his counsel to dismiss the charge of perjury against Hutchison in consideration of his dismissal of the disbarment proceedings against the respondent. The record regarding conversations between O'Hair and Craig merely shows that they, as lawyers, realized the influence upon the bar and the community of the various lawsuits which apparently have arisen out of the enmity existing between these men. It is evident from the record that both Hutchison and the respondent have engaged the time and processes of the court of Edgar county in numerous suits in which they were in one way or another interested, which appeared to have in them the elements of waging a battle between them. Counsel are to be commended for taking the position that the time of the courts and public funds should not be devoted to the venting of personal spite nor for the purpose of jockeying for positions of advantage in a distinct and separate controversy. The record in this case does not disclose any attempt on the part of respondent to bring about a compromise of this information.

We are of the opinion that the evidence offered in support of the second additional count does not sustain the charges forming a basis for disbarment. The rule will therefore be discharged.       *Rule discharged.*

THOMPSON, FARMER and DUNCAN, JJ., specially concurring:

We concur in the decision of the court that the rule against respondent be discharged but we do not concur in all that is said in the opinion. Rule 40 provides that "in case an application shall be made to strike the name of an attorney from the roll, there shall be filed an information, * * * signed by the Attorney General, a State's attor-

- ney, the president and secretary of a regularly organized bar association, * * * or any person aggrieved by the misconduct of the attorney charged. Where the information is signed by such aggrieved person he shall verify it by an affidavit, upon which perjury can be assigned." The original information contained no count charging misconduct of respondent in any matter in which relator was concerned, and the State Bar Association, upon investigation, found that the proof did not sustain the charges contained in the information and recommended that the information be dismissed. The third original count of the information having been filed in, violation of the rules of this court should not have been considered by the court, but should have been dismissed when an examination of the record showed that relator, a private individual, was not aggrieved by the alleged misconduct of respondent charged in that count.

As to the second additional count of the information, we think respondent acted with moderation, that his conduct in the matter is commendable, and that he should in no way be criticised for presenting the evidence of perjury to the grand jury. Fourteen separate counts were filed in the original information, to all of which relator attached his affidavit. The grievance committee of the State Bar Association, after investigation and the hearing of testimony, found that the proof did not sustain the charges contained in any of these counts. Respondent would have been remiss in his duty as a citizen if he had not made an effort to secure the indictment and conviction of a man who he believed had committed willful perjury. The record shows that respondent applied to the Attorney General to send an assistant to take charge of the grand jury investigation of this matter. Failing to secure relief from this source respondent requested the circuit judge to appoint as a special State's attorney some reputable attorney of the State, but the judge refused to appoint any non-

294 — 31

resident attorney. Respondent then filed his petition for the appointment of a special State's attorney, and, as stated in the opinion, a reputable member of the local bar was appointed. It is difficult to conceive of more moderate conduct on the part of respondent under the circumstances. This record is pregnant with proof that relator's prosecution of this information was to ruin the good reputation and high standing of respondent. If members of the bar cannot protect themselves from this sort of an attack without subjecting themselves to disbarment proceedings then practicing law is indeed a hazardous business. The greatest asset of an attorney is his reputation for honesty and fair dealing, and in our opinion he ought to be encouraged to protect this asset vigorously and without fear.