2025 IL App (2d) 240431-U
No. 2-24-0431
Order filed September 2, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-48 |
| JOSE M. AGUIRRE, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying defendant's motion for a new trial based on a romantic relationship that the prosecutor developed with the victim between defendant's trial and sentencing. The relationship did not create a *per se* conflict of interest, and defendant did not prove an actual conflict of interest where he failed to identify specifically how the alleged conflict influenced the prosecutor's strategy, tactics, or decision making between trial and sentencing.

¶ 2    After a bench trial, defendant, Jose M. Aguirre, was convicted of one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020)) and sentenced to 30 months' probation. After we affirmed the judgment, defendant moved for a new trial or a new sentencing hearing, based on newly discovered evidence that, between the trial and sentencing, the lead prosecutor had

initiated a sexual relationship with the complaining witness. The trial court vacated the sentence only and resentenced defendant to five months' conditional discharge. On appeal, defendant argues that the court erred in denying him a new trial. We affirm.

¶ 3                                             I. BACKGROUND

¶ 4      As pertinent here, the State charged defendant with aggravated domestic battery in that, on or about January 31, 2020, he knowingly strangled J.N., his domestic partner. The lead prosecutor throughout the case was Assistant State's Attorney Mark Shlifka. On March 16, 2022, after a bench trial, the trial court found defendant guilty. On May 13, 2022, the court denied defendant's post-trial motion and sentenced him to 30 months' probation.

¶ 5      On appeal, defendant argued that he was not proved guilty beyond a reasonable doubt. By an order dated February 17, 2023, we affirmed. *People v. Aguirre*, 2023 IL App (2d) 220179-U.

¶ 6      On April 21, 2023, J.N. petitioned for an emergency order of protection against Shlifka. She alleged as follows. On March 16, 2022, she testified against defendant in the present case. Shlifka was the lead prosecutor. After the trial, Shlifka contacted J.N. by social media, and they initiated a dating relationship that became sexual. J.N. was "currently [the] defendant in an aggravated DUI/DWLR case." Shlifka promised that he would assist her in her criminal case. On March 4, 2023, J.N. told Shlifka that she wanted to end the relationship. He removed his belongings from her home but left behind a cell phone containing video recordings of their sexual encounters and nude photographs of her.

¶ 7      On May 22, 2023, defendant moved again in this case for a new trial or a new sentencing hearing. He alleged that, on April 24, 2023, he learned of J.N.'s petition against Shlifka. According to defendant, "[t]he language in the allegation of the [petition] seem[ed] to indicate that the

relationship [between J.N. and Shlifka] began after the conclusion of the trial, but prior to the sentencing ***."

¶ 8 In its response, the State, now represented by a special prosecutor, argued that defendant had not alleged that Shlifka's purported misdeeds had affected defendant's trial. The State's response attached the affidavit of J.N. She stated as follows. On March 30, 2022, Shlifka contacted her on social media. He was aware of her pending criminal case. In April 2022, after the relationship had become sexual, they discussed her case several times. While her case was pending, Shlifka gave her gifts and sent her messages by e-mail, social media, text, and voice mail. Shlifka left his cell phone at her home, and she discovered that it contained video and audio recordings of their sexual encounters and nude photographs of her.

¶ 9 At the hearing on his motion, defendant argued that J.N.'s affidavit established that her relationship with Shlifka began before sentencing. He added, "We don't know when this improper relationship began." The trial court asked defendant whether he had the burden to show prejudice from Shlifka's impropriety. Defendant responded that, once the impropriety was proved, the burden should shift to the State to prove that his trial was fair. He cited no authority for his argument.

¶ 10 The State argued that J.N.'s affidavit established that her personal relationship with Shlifka began after the trial ended. According to the State, there was no evidence that the relationship began earlier. Therefore, the State concluded that defendant had not shown the prejudice needed to warrant a new trial. The State conceded that defendant should receive a new sentencing hearing.

¶ 11 The trial court agreed with the State and vacated defendant's sentence but not his conviction. The court determined that, because the improper relationship "began *** after the conclusion of the bench trial, after the finding of guilty by the [c]ourt," the misconduct "[did] not

taint the bench trial or the outcome of the bench trial." Later, the court resentenced defendant to five months' conditional discharge. He appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant argues that the trial court abused its discretion by refusing to vacate his conviction and grant him a new trial. For the following reasons, we affirm.

¶ 14    We will not disturb the denial of a motion for a new trial absent a showing that the trial court abused its discretion. *People v. Hall*, 194 Ill. 2d 305, 343 (2000). A trial court abuses its discretion only if its decision is arbitrary, unreasonable, or fanciful or if no reasonable person would have taken the court's position. *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 15    Here, the trial court's position was that a new trial was unwarranted because defendant had not shown that Shlifka's improper relationship with J.N. affected the fairness of defendant's trial. The court relied on the undisputed evidence that Shlifka did not even attempt to initiate a relationship with J.N. until several days after defendant was found guilty. Thus, the claim failed for lack of prejudice.

¶ 16    Defendant argues that the trial court improperly shifted the burden to defendant to show prejudice resulting from the prosecutor's misconduct. Defendant contends that the issue is whether the misconduct created "the appearance of impropriety" such that upholding his conviction would "damage the integrity of our criminal justice system."  He relies primarily on *People ex rel. Hutchison v. Hickman*, 294 Ill. 471, 472 (1920). *Hickman* was an action to disbar the respondent, a state's attorney, for professional misconduct. *Id.* at 472, 477. Respondent prosecuted William Mings for murder and, at some point during the prosecution and before Mings's conviction, discussed with the murder victim's widow the possibility of representing her in a civil suit against Mings for damages. *Id.* at 472, 475. After Mings's conviction, the respondent filed and settled a

civil suit on the widow's behalf against Mings, but the evidence showed that the respondent was not retained until after Mings's conviction. *Id.* The gravamen of the disbarment action was that the respondent had violated the statute providing that the "state's attorney 'shall not be retained or employed, except for the public, in a civil case depending upon the same state of facts on which a criminal prosecution shall depend.' " *Id.* at 473 (quoting Ill. Rev. Stat. 1917, ch. 14, § 6a). The respondent argued that the statute did not apply because the civil suit was not filed until after the criminal case had concluded. *Id.* The court disagreed:

"If it be said that a state's attorney may be employed in a civil case after the conclusion of a criminal prosecution, such a holding invites evasion of the spirit of the law, which prohibits his being interested in the prosecution of a civil case based on the facts of the criminal case. [] We are of the opinion that it was the purpose and intent of the Legislature that a state's attorney should not at any time be interested or employed in a civil case which it might reasonably be presumed would grow out of and depend upon the facts upon which the criminal prosecution depends" *Id.* at 476.

¶ 17　*Hickman* does not discuss any impact upon the criminal case against Mings. The court did note that a prosecutor violating the statute "may be influenced by improper motives of self-interest to secure a conviction []." *Id*. But because *Hickman* was a civil case concerning discipline of a prosecutor for unethical conduct proscribed by a statute that does not apply here (see 55 ILCS 5/3-9009), we do not see much relevance.

¶ 18　Nor are the other cases relied upon by defendant very helpful. Cherry picking high-sounding phrases, defendant invites us to reverse by finding "an appearance of impropriety," rather than finding an abuse of discretion in the trial court's denial of the motion for new trial where the trial court required defendant to show prejudice. In support of his invitation, he cites *People v.*

*Courtney*, 288 Ill. App. 3d 1025, 1033 (1997) (reversing denial of motion for new trial where *per se* conflict of interest arose when defendant's attorney withdrew and then became the county's State's Attorney), *People v. Lang*, 346 Ill. App. 3d 677, 684 (2004) (reversing conviction for DWLR where motion for special prosecutor was denied despite assistant state's attorney "aggressive behavior" investigating defendant while hiding behind potted plants in the courthouse, appearing 23 times on the matter after being ordered not to participate in the prosecution, and serving as the sole witness against defendant), and *In re Appointment of a Special State's Attorney*, 2020 IL App (2d) 190845 (reversing both (1) grant of motion for special prosecutor brought by county board chair who objected to certain ordinances enacted by county board and (2) denial of state's attorney's motion to dismiss declaratory action sought by chair).

¶ 19    But none of these cases support the argument that the trial court erred in demanding defendant show prejudice in the handling of his matter.  *In re Appointment of a Special State's Attorney,* at ¶ 42, involved a motion for the appointment of a special prosecutor and found no actual conflict of interest, which is required by the current statute. *Courtney*, 288 Ill. App. 3d at 1032, involved a *per se* conflict, where prejudice need not be shown. See *People v. Yost*, 2021 IL 126187, ¶ 39.

¶ 20    *Lang* comes closest, because it does reverse the trial court's denial of a special prosecutor due to the "appearance of impropriety" and "[e]ven in the absence of demonstrated prejudice." *Lang*, 346 Ill. App. 3d at 682. But we think its utility is limited to its specific and egregious facts and note that the statute at the time *Lang* was decided, concerning special prosecutors, has been amended. See Pub. Act 99-352, § 3-9008,  (eff. August 17, 2012). The current statute requires "an actual conflict of interest," (55 ILCS 5/3-9008 (a-10) (West 2022)), which our supreme court has recently construed to require "a specific deficiency in counsel's strategy, tactics, or decision-

making that is attributable to the alleged conflict." See *People v. Muhammad*, 2025 IL 130470, 51 ("As such, an appearance of impropriety alone is insufficient to remove a prosecutor or special prosecutor under the applicable version of section 3-9008 (a-10).").

¶ 21    Given our supreme court's construction in *Muhammad* that a deficiency attributable to the alleged conflict is required to establish an actual conflict of interest in order to remove a prosecutor, we think the cases concerning defense attorney conflicts of interest in criminal cases are also instructive here. In Illinois, there are two types of conflict of interest—actual and *per se*. *People v. Yost*, 2021 IL 126187, ¶ 37. *Yost* summarized each type as applied to a defense attorney's representation:

> "To establish an actual conflict of interest, a defendant must identify an actual conflict that adversely affected his counsel's performance. [Citation.] The defendant is required to identify a specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict. [Citation.] Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest. [Citation.]

> In contrast, a *per se* conflict does not require a defendant to establish that counsel's performance was affected by the conflict [citation] or show actual prejudice [citation] A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict. [Citation.] Generally, a *per se* conflict arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant ***." *Id.* ¶¶ 38-39.

*Yost* recognized only three *per se* conflicts of interest for defense counsel: (1) contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2 contemporaneous representation of a prosecution witness; and (3) personal involvement in the

prosecution of the defendant as a former prosecutor. *Id.* ¶ 66. *Yost* found no *per se* conflict of interest where the defendant's counsel had previously represented the murder victim in defendant's case but that representation was not contemporaneous with his representation of the defendant. *Id.* ¶¶ 26-28, 68. The defendant did not claim an actual conflict of interest, *id.* ¶ 66, which would have required a showing of an adverse effect on counsel's performance. *Id.* at ¶ 38.

¶ 22    A recent appellate case construed *Yost* in the context of a romantic relationship between the defense counsel and the defendant. In *People v. Hayes*, 2024 IL App (5th) 210368, ¶¶ 13, 15, the defendant filed a post-trial motion, contending that co-defense counsel, who represented the defendant through the jury verdict, had a conflict of interest because they had been in a sexual relationship before and during the trial. After hearing evidence, the trial court denied the motion and sentenced the defendant. *Id.* ¶ 35.

¶ 23    On appeal, the appellate court held that there was no *per se* conflict because the situation did not fit any of *Yost*'s three categories. *Id.* ¶ 42. The court declined "to create a new fourth status under the *per se* rule for attorneys who engage in romantic and sexual relationships with their clients." *Id.* However, the court held that, in that case, there was an actual conflict of interest and resultant prejudice that adversely affected the lawyer's performance; therefore, it vacated the judgment and remanded the cause for a new trial. *Id.* ¶¶ 56, 59-70, 75.

¶ 24    Applying this framework to the present case, we note that defendant does not contend that Shlifka's sexual relationship with J.N. created a *per se* conflict of interest. Clearly, the situation did not fit any of the three scenarios of *per se* conflict recognized in *Yost*. If, as in *Hayes*, a sexual relationship between a defendant and his attorney does not create a *per se* conflict, then a sexual relationship between a State witness and the prosecutor, while tawdry and improper, should not create a *per se* conflict either.

¶ 25    The trial court held that defendant did not prove that Shlifka's improper relationship with J.N. began before defendant was convicted. Defendant offers no more than speculation to the contrary, so we accept the trial court's finding. Also, after the State conceded a new sentencing hearing, the court granted that portion of defendant's motion. Therefore, nothing related to sentencing supports granting defendant relief. To warrant further relief, defendant would have to identify a conflict *and prejudice* in that the conflict "adversely affected the lawyer's performance" (Hayes, 2020 IL App (5th) 210368, at ¶ 56)  occurring in the relatively narrow time frame between his trial and the ruling on the original motion for new trial.

¶ 26    But even if we accept as true the proposition that defendant has shown a conflict, he has failed to carry his burden under *Yost* and *Muhammad* to show "specific" prejudice, *i.e.*, how particularly the conflict influenced Shlifka's "strategy, tactics, or decision making." *Yost*, 2021 IL 126187, ¶ 38; *Muhammad*, 2025 IL 130470, 51. And "[s]peculative allegations and conclusory statements are insufficient to establish an actual conflict of interest." *Id*. at 52. Defendant specifies no actual deficiency in Shlifka's handling of defendant's case between his trial and sentencing. Indeed, he repudiates any burden to establish conflict-related deficiency. Thus, the trial court did not abuse its discretion when it denied the motion for new trial because defendant failed to prove prejudice.

¶ 27    We emphasize that Shlifka's relationship with the prosecution witness was highly unethical and rightly the subject of disciplinary action against him. See Ill. Const. 1970, art. I, § 8.1(a)(1) (crime victims have the right to be treated fairly and with respect for their dignity and privacy throughout the criminal justice process); Ill. R. Pro. Conduct (2010) R. 1.8(j), cmt. 17 (eff. Jan. 1, 2010) (an attorney may not have sexual relations with a client unless a consensual sexual

relationship existed previously—regardless of prejudice to the client). Here, however, Shlifka's serious ethical lapses do not support providing relief to defendant.

¶ 28                                    III. CONCLUSION

¶ 29    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 30    Affirmed.