**2021 IL 126187**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126187)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MICHAEL S. YOST, Appellee.

*Opinion filed October 21, 2021.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    In Illinois, a *per se* conflict of interest requires automatic reversal of a criminal conviction unless the defendant waives the conflict. See, *e.g.*, *People v. Peterson*, 2017 IL 120331, ¶ 104. This appeal asks us to determine whether a *per se* conflict exists when defense counsel previously represented the victim of defendant's crime but the representation concluded before defendant's trial. The circuit court

answered that question in the negative and denied defendant's motion for a new trial. The appellate court reached the opposite conclusion, reversed defendant's conviction, and remanded for a new trial. 2020 IL App (4th) 190333-U, ¶¶ 51, 64. For the reasons that follow, we reverse the appellate court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        In 2015, the State charged defendant, Michael S. Yost, with multiple counts of first degree murder in connection with the fatal stabbing of his former girlfriend, Sheri Randall. The matter proceeded to a bench trial in the circuit court of Moultrie County. Defendant was represented by appointed counsel, Bradford Rau.

¶ 4                                    A. Bench Trial

¶ 5        At defendant's bench trial, the State presented evidence that on the morning of March 4, 2015, an officer responded to the victim's apartment. Upon entry, the officer observed blood in the kitchen and then discovered defendant and the victim on the floor of the victim's bedroom. Both had visible stab wounds, and there was a large amount of blood on the bed and the floor. Defendant was transported to the hospital, but the victim was pronounced dead at the scene.

¶ 6        A forensic pathologist testified that the victim's cause of death was multiple stab wounds caused by another person. The victim sustained defensive wounds to her hands and stab wounds to her back. In contrast, the pathologist opined that defendant's wounds were self-inflicted.

¶ 7        The State introduced testimony from two bar employees who observed defendant and the victim at a bar the night before her murder. According to the employees, defendant bought several drinks for the victim. At approximately 10:30 p.m., a bar employee escorted defendant from the bar because he was yelling and arguing with another man about the victim.

¶ 8        In addition, three witnesses testified that approximately a week before the victim's death, they observed defendant and the victim arguing at a bar. The witnesses heard defendant curse at the victim and threaten to kill her. The State also presented the testimony of two women who previously dated defendant. Both of

those women testified that defendant made statements threatening to harm or kill the victim.

¶ 9       Defendant testified that he is a diabetic. Defendant confirmed he was at the bar the evening before the victim was found dead in her apartment. Defendant drank alcohol and took his diabetes medication that day. Defendant could not recall most of his activities that evening and denied knowledge of being escorted from the bar or leaving the bar.

¶ 10      Defendant remembered, however, being at the victim's apartment that evening. Defendant and the victim talked while she cooked in the kitchen. Defendant could not remember the next series of events but recalled waking up in the victim's bedroom and removing a knife from his own body before losing consciousness.

¶ 11      Defendant presented the testimony of Dr. Gregory Clark, who was admitted as an expert witness in endocrinology. After reviewing defendant's medical records, Dr. Clark concluded that defendant's diabetes was not well controlled. Dr. Clark testified that, in his professional opinion, defendant was severely hypoglycemic and likely lost consciousness on the evening of March 3, 2015.

¶ 12      Following closing arguments, the trial court found defendant guilty of first degree murder. The court scheduled the sentencing hearing for a later date.

¶ 13      Less than a week later, on September 21, 2016, defendant wrote a letter to the trial court requesting a new trial. In that letter, defendant informed the court as follows:

"I have just been made aware that my Attorney Mr. Brad Rau was also a[n] attorney for the victim in my case Mrs. Sheri Randall in a past case of hers. This means they had a past working relationship together which means there was a conflict of interest. Nobody made me aware of this when Mr. Rau was appointed to me and I never once said I was okay with this. With a case a[s] serious as mine this is something that should never be overlooked. I feel this was very unfair to me and that is why I now motion the court for a new trial."

¶ 14      According to a docket entry dated September 22, 2016, the trial court placed defendant's letter on file. The court directed the clerk to forward copies of the letter to the State and defense counsel.

¶ 15    On September 30, 2016, defendant, through his appointed counsel Rau, filed a motion for a new trial. The motion did not reference defendant's letter or his allegations of a conflict of interest.

¶ 16    After a hearing, the trial court denied defendant's motion for a new trial, and sentenced defendant to 75 years' imprisonment. The court later denied defendant's motion to reconsider the sentence.

¶ 17                              B. Direct Appeal

¶ 18    On appeal, the appellate court allowed the State's motion for an agreed summary remand for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into defendant's allegation that his appointed trial counsel, Rau, had a conflict of interest. *People v. Yost*, No. 4-16-0903 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19                         C. *Krankel* Proceedings

¶ 20    After conducting a preliminary inquiry on remand, the trial court concluded that defendant's allegations had merit and appointed new counsel, Walter Lookofsky, to investigate defendant's claims. In March 2019, Lookofsky filed a "disclosure of potential conflict of interest" that stated Lookofsky had previously retained attorney Rau (defendant's original trial counsel) in unrelated civil litigation. According to the pleading, that prior civil litigation was "complete" and "ended," and Rau was fully paid for his services. Lookofsky further stated that he disclosed this "potential conflict of interest" to defendant during a scheduled inmate telephone call and that defendant waived any potential conflict.

¶ 21    In April 2019, defendant, through appointed counsel Lookofsky, filed an amended motion for a new trial, alleging that defendant's trial counsel, Rau, labored under a *per se* conflict of interest. Specifically, defendant alleged that Rau had represented the victim, Sheri Randall, on two prior occasions in an unrelated case. Rau's two prior representations of the victim included the first appearance in her case and during the negotiated guilty plea proceeding that resolved her case. The

motion further alleged that defendant did not waive his right to conflict-free representation during his criminal trial.

¶ 22    Also in April 2019, the circuit court held a hearing and confirmed on the record that defendant waived any conflict of interest based on Lookofsky's prior hiring of Rau on an unrelated civil matter. The trial judge (Hon. Hugh Finson) also addressed a possible conflict of interest involving himself, based on the judge's prior representation of defendant's father in an adoption and divorce proceeding, and the judge's prior representation of defendant in an unrelated matter "more than 20 years ago." Defendant waived any conflict-of-interest claims based on the trial judge's prior representation of defendant and defendant's family members. The court then scheduled a hearing on defendant's amended motion for a new trial for a later date.

¶ 23    In May 2019, the circuit court conducted a hearing on defendant's amended motion. Defendant testified that on September 15, 2016, he was convicted of the victim's murder. After his conviction but before sentencing, defendant learned from his mother that his trial counsel, Rau, had previously represented the victim. According to defendant, his mother found this information by searching Internet records on a website called "Judici." Defendant stated that he "was never made aware of [Rau's prior representation of the victim] at all." Defendant denied that he waived the potential conflict.

¶ 24    On cross-examination, defendant confirmed that he sent a letter to the circuit court on September 21, 2016, informing the court of Rau's potential conflict of interest and prior representation of the victim. Defendant brought the issue to Rau's attention, but Rau stated that he was unsure of whether he had previously represented the victim. Rau also told defendant that "it didn't matter" because the victim was deceased. Defendant believed that Rau's prior representation of the victim involved a charge of driving under the influence.

¶ 25    After defendant's testimony, the parties agreed that the circuit court could take judicial notice of the record in People v. Randall, No. 08-DT-22 (Cir. Ct. Moultrie County), and in defendant's criminal case. The court also admitted into evidence a notarized affidavit from defendant's trial counsel.

¶ 26    Bradford Rau testified that he served as the public defender for Moultrie County from 2004 to 2017. Rau was appointed to represent defendant in the victim's

murder case. Rau acknowledged that court records showed that he represented the victim in a prior case, but Rau had "no independent recollection of ever representing [the victim]."

¶ 27 Rau confirmed that defendant brought the matter to Rau's attention after defendant was convicted of the victim's murder. Rau testified that he did not feel he owed any duties or obligations to the victim during his representation of defendant. Rau explained as follows:

"I don't have any recollection of [the victim]. My representation of her probably—may have—part of my job as public defender was to be here on Monday mornings when people were appointed the public defender. A lot of times I would meet with that person; the State would hand me the file; I would review the police reports and then I would step out and interview with the appointed client that day. Sometimes I made appointments and did follow[-]up pleadings with them in my office, but probably 70 percent of the time the next time I saw that individual was at the next pretrial, and as far I know, I appeared, according to court records, twice for [the victim], as the initial appearance and at the plea."

¶ 28 On cross-examination, Rau confirmed the validity of the court records indicating that he represented the victim in a prior matter. Rau acknowledged that defendant sent a letter to the trial judge about the issue. Rau believed that he addressed defendant's letter with the court but conceded that nothing in the record supported his belief.

¶ 29 Following argument, the circuit court denied defendant's motion. The court concluded that there was no *per se* conflict of interest under the facts of defendant's case and this court's decision in *People v. Hillenbrand*, 121 Ill. 2d 537 (1988). In *Hillenbrand*, this court concluded that a *per se* conflict did not exist when, *inter alia*, defense counsel's representation of the victim "was concluded long before [Hillenbrand's criminal case]." *Id.* at 545.

D. Appeal from *Krankel* Proceedings

¶ 31     On appeal, the appellate court reversed, finding that Rau "labored under a *per se* conflict of interest as a matter of law." 2020 IL App (4th) 190333-U, ¶ 51. The court observed that the undisputed facts established that (1) Rau represented the victim in defendant's case on a 2008 DUI charge, (2) Rau did not disclose that prior representation of the victim to defendant, and (3) defendant did not knowingly waive his rights to conflict-free representation. *Id.*

¶ 32     In relevant part, the appellate court rejected the circuit court's reliance on *Hillenbrand*. The court determined that this court's more recent decision in *People v. Hernandez*, 231 Ill. 2d 134, 143 (2008), controlled the dispute because *Hernandez* held that a *per se* conflict exists when counsel's representation of the victim is " ' "prior or current" or "previous or current." ' " 2020 IL App (4th) 190333-U, ¶ 57 (quoting *Hernandez*, 231 Ill. 2d at 151). The court felt compelled to follow *Hernandez* and stated that "[u]nless and until our supreme court addresses the tension between *Hernandez* and *Hillenbrand* we are bound by the reasoning set forth above." *Id.* ¶ 58.

¶ 33     The State appealed pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2019). We allowed the State's petition for leave to appeal.


¶ 34                                II. ANALYSIS

¶ 35     This appeal asks whether there is a *per se* conflict of interest when defense counsel previously represented the victim of defendant's crime. The question of whether a *per se* conflict exists presents a legal question when, as here, the facts underlying the appeal are undisputed. *Peterson*, 2017 IL 120331, ¶ 101. We review *de novo* that question of law. *Id.*

¶ 36     A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Green*, 2020 IL 125005, ¶ 20 (citing *People v. Nelson*, 2017 IL 120198, ¶ 29). The guarantee of conflict-free representation ensures that a defendant is provided " 'assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations.' " *Peterson*, 2017 IL 120331, ¶ 102 (quoting *People v. Spreitzer*, 123

Ill. 2d 1, 13-14 (1988)). "Essentially, the party asserting such a claim is arguing that a conflict rendered the attorney's performance substandard and that the substandard performance caused prejudice." *In re Br. M.*, 2021 IL 125969, ¶ 44.

¶ 37    Unlike other jurisdictions, Illinois law recognizes two types of conflict of interest—actual and *per se*. *People v. Fields*, 2012 IL 112438, ¶ 17; see also *Spreitzer*, 123 Ill. 2d at 14 (noting "[t]he term '*per se*' conflict does not appear in the United States Supreme Court case law, or for that matter, in cases from our sister jurisdictions").

¶ 38    To establish an actual conflict of interest, a defendant must identify an actual conflict that adversely affected his counsel's performance. *Hernandez*, 231 Ill. 2d at 144. The defendant is required to identify a specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict. *Id.* Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest. *Id.*

¶ 39    In contrast, a *per se* conflict does not require a defendant to establish that counsel's performance was affected by the conflict (*Peterson*, 2017 IL 120331, ¶ 104) or show actual prejudice (*Hernandez*, 231 Ill. 2d at 143). A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict. *Fields*, 2012 IL 112438, ¶ 17. Generally, a *per se* conflict arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant. *Id.* When a *per se* conflict exists, it requires automatic reversal of the criminal conviction unless the defendant waives his right to conflict-free counsel. *Green*, 2020 IL 125005, ¶ 24.

¶ 40    We have explained that defense counsel's association with or connection to the victim, the prosecution, or a prosecution witness may have a subtle or subliminal effect on counsel's performance that is difficult to detect and demonstrate, which justifies application of the *per se* conflict rule. *Peterson*, 2017 IL 120331, ¶ 103. We have also expressed concern that defense counsel will unnecessarily be subjected to later allegations that his or her representation of the defendant was not completely faithful. *Spreitzer*, 123 Ill. 2d at 16-17.

¶ 41    In this case, the parties disagree on whether a *per se* conflict of interest based on defense counsel's representation of the victim is limited to situations when

counsel's representation of the victim and the defendant is contemporaneous or includes counsel's prior representation of the victim. Reflecting the appellate court's perception of "tension" between our decisions in *Hillenbrand* and *Hernandez* on that question (2020 IL App (4th) 190333-U, ¶ 58), the parties disagree on which decision is controlling. We now consider those decisions.

¶ 42     In *Hillenbrand*, this court considered the *per se* conflict rule in the context of defense counsel's prior representation of the victim of defendant's crime. Hillenbrand pleaded guilty to the murder of his former girlfriend, Patricia Pence, and her boyfriend, George Evans. Hillenbrand later moved to withdraw his guilty plea and argued, in relevant part, that his plea counsel, Edward Rashid, labored under a *per se* conflict of interest because he had previously represented the victim and her family in various legal proceedings. *Hillenbrand*, 121 Ill. 2d at 543.

¶ 43     At an evidentiary hearing on Hillenbrand's motion to withdraw his guilty plea, Rashid's secretary, Shirley Palochko, testified because Rashid had died. According to Palochko, Rashid prepared personal and business income tax returns for Charles and June Pence, the victim's parents. *Id.* at 543-44. Charles was a " 'steady client' " of Rashid for several years prior to the murders, including in a gambling action and a marriage dissolution action against June. Charles later, however, obtained services from two other attorneys on his divorce and postdecree matters. *Id.* at 544.

¶ 44     Palochko further testified that Rashid prepared income tax returns for the victim and defendant, who had at one time operated a restaurant together. Defendant routinely used Rashid for legal services, including tax work. Defendant, however, paid Rashid no legal fees for the underlying murder charges because Rashid volunteered his services. Palochko testified that Rashid did not receive substantial legal fees from anyone in the Pence family. *Id.*

¶ 45     To address Hillenbrand's claim of a *per se* conflict based on Rashid's prior representation of the victim and her family, this court observed that "allegations and proof of prejudice are unnecessary in cases when defense counsel, without the knowledgeable assent of the defendant, might not have an undivided loyalty to his client because of his commitments to others." *Id.* (citing *People v. Coslet*, 67 Ill. 2d 127, 133 (1977), and *People v. Stoval*, 40 Ill. 2d 109, 112 (1968)). Hillenbrand, however, was required to establish a contemporaneous conflicting professional commitment to another to justify application of the *per se* conflict rule. *Id.* at 544-

45 (citing *People v. Free*, 112 Ill. 2d 154, 168-69 (1986)). Reviewing the circumstances of Hillenbrand's case, we concluded as follows:

> "Palochko's testimony established that Rashid regularly represented the Pences from 1965 to early 1970. He had also represented [the deceased victim] on tax matters in connection with the restaurant, but that representation was concluded long before the murders. Rashid was not on retainer for the Pences, he had concluded all of his services prior to representing the defendant on these charges, he was not the only attorney the Pences consulted, and he derived little of his income from representation of the Pences. Under these circumstances, we conclude that Rashid did not have a contemporaneous professional commitment to the Pences that created a [*per se*] conflict of interest in his representation of the defendant." *Id.* at 545.

¶ 46 We next consider our decision in *Hernandez*, where this court considered the *per se* conflict rule as it applies to counsel's association with the victim in a different context—"whether a criminal defense attorney labors under a *per se* conflict of interest when he or she also represents the alleged victim of defendant's offense, but where the attorney has had no contact with the alleged victim for several years." *Hernandez*, 231 Ill. 2d at 136.

¶ 47 Hernandez was charged with solicitation of murder for hire of Jaime Cepeda, a man who had kidnapped and beaten Hernandez in an attempt to recover money Hernandez allegedly owed for confiscated illegal narcotics. Cepeda also threatened to kill Hernandez's family if Hernandez failed to pay for the confiscated narcotics. In 2003, Hernandez retained attorney John DeLeon to represent him on the solicitation of murder charges involving Cepeda. *Id.* at 137-39.

¶ 48 Unknown to Hernandez, however, Cepeda had retained DeLeon in 1999 to defend Cepeda against the unlawful use of a weapon charges associated with Hernandez's kidnapping. DeLeon continued to represent Cepeda through January 2001, when a bond forfeiture warrant was issued against Cepeda for failure to appear in court after Cepeda fled the country. Although DeLeon had no further contact with Cepeda after January 2001, DeLeon remained the attorney of record for Cepeda. *Id.* at 139.

¶ 49 At defendant's criminal trial, Cepeda's name appeared on the State's list as a potential witness. DeLeon and the assistant state's attorney prosecuting defendant's case were aware that DeLeon represented both defendant and Cepeda, but neither defendant nor the circuit court was advised of DeLeon's dual representation. Following a bench trial, Hernandez was found guilty of solicitation to commit murder for hire. *Id.*

¶ 50 While Hernandez's direct appeal of his conviction was pending, he filed a postconviction petition alleging, in relevant part, that DeLeon's dual representation constituted a *per se* conflict of interest that denied Hernandez effective assistance of counsel. Hernandez attached to his petition DeLeon's affidavit, which averred that " 'I still considered myself to be his [Cepeda's] attorney, for if he was arrested on that warrant [bond forfeiture], as my appearance was still on file, I would still be his attorney.' " *Id.* DeLeon also averred that to his knowledge neither he nor the prosecutor brought his " 'prior and active representation of Jaime Cepeda during my representation of Juan Hernandez' " to the attention of the court or Hernandez. *Id.*

¶ 51 Following an evidentiary hearing, the circuit court denied Hernandez's petition. The circuit court concluded that there was no *per se* conflict because there was no ongoing relationship between counsel and Cepeda for the preceding five years, DeLeon had no substantial contact with Cepeda, and Cepeda had not been called as a witness in Hernandez's trial. On direct consolidated appeal, the appellate court affirmed. *Id.* at 141-42.

¶ 52 On appeal to this court, we first considered the State's request that we abandon the *per se* conflict rule and apply only an actual-conflict analysis in Illinois. We rejected the State's request, concluding that the State failed to establish good cause or a compelling reason for this court to depart from *stare decisis*. *Id.* at 147-48.

¶ 53 On the merits, this court declined to impose an "active" requirement on the category of *per se* conflicts that involve defense counsel's representation of the victim. *Id.* at 151. Instead, we concluded that "a prior relationship falls within [the victim] category. As such, no active representation [of the victim] is necessary and, thus, we need not inquire into the specific facts of the nature and extent of the representation to determine whether the *per se* rule applies." *Id.* Accordingly, we stated as follows:

"[T]o ensure that a defendant's right to effective assistance of counsel is given effect, the *per se* conflict rule applies whenever an attorney represents a defendant and the alleged victim of the defendant's crime, regardless of whether the attorney's relationship with the alleged victim is active or not, and without inquiring into the specific facts concerning the nature and extent of counsel's representation of the victim." *Id.* at 151-52.

¶ 54 Applying those principles to the facts in Hernandez's case, we held that the lower courts erred in finding no *per se* conflict of interest because DeLeon represented both defendant and the alleged victim. Because Hernandez had not waived that conflict, we reversed his conviction. *Id.* at 152-53.

¶ 55 Here, the State argues that *Hillenbrand* is controlling on the question of whether a *per se* conflict exists because Rau's representation of the victim "concluded long before [the victims' murders]" (*Hillenbrand*, 121 Ill. 2d at 545) and was not contemporaneous with Rau's representation of defendant. The State contends that the circuit court correctly relied on *Hillenbrand* to determine that there was no *per se* conflict in defendant's case.

¶ 56 The State acknowledges our statements in *Hernandez* that seem to suggest that defense counsel's prior or previous representation of the victim constitutes a *per se* conflict of interest, but the State notes that none of the decisions cited by this court in *Hernandez* for that proposition involved counsel's prior representation of the victim. More importantly, *Hernandez* involved the contemporaneous dual representation of the defendant and the victim—counsel in *Hernandez* was still the attorney of record for the victim when counsel represented Hernandez. *Hernandez*, 231 Ill. 2d at 139. Ultimately, the State urges this court to adhere to *Hillenbrand* and reaffirm its holding that a *per se* conflict of interest based on counsel's representation of the victim occurs only when that representation is contemporaneous with counsel's representation of the defendant.

¶ 57 Defendant responds that *Hillenbrand* is inapplicable because that decision focused primarily on counsel's representation of the victim's parents. To the extent that *Hillenbrand* commented on defense counsel's prior representation of the victim as having "concluded long before the murders," that statement was made in passing and should be considered *dicta*. Alternatively, defendant suggests that this court should overrule *Hillenbrand* to the extent that its statement about prior

representation conflicts with this court's more recent pronouncements on the *per se* conflict rule.

¶ 58     Defendant observes that since *Hillenbrand* was decided this court has applied the *per se* conflict rule broadly to cases involving defense counsel's representation of the victim of defendant's crime. Specifically, *Hernandez*, 231 Ill. 2d at 143, expressly stated that a *per se* conflict exists "when defense counsel has a prior or contemporaneous association with the victim." Subsequently, this court has repeatedly cited *Hernandez*'s formulation of the *per se* conflict rule. See, *e.g.*, *Green*, 2020 IL 125005, ¶ 24; *Fields*, 2012 IL 112438, ¶ 18. Defendant urges this court to apply *Hernandez* here to find that Rau labored under a *per se* conflict because he previously represented the victim of defendant's crime.

¶ 59     Having reviewed our jurisprudence on the *per se* conflict rule, we find persuasive the State's position and its interpretation of *Hillenbrand* and *Hernandez*. *Hillenbrand* is directly on point because it involves counsel's prior representation of the deceased victim of the defendant's crime. In that case, we held that counsel's prior representation of the victim of a defendant's crime does not constitute a *per se* conflict of interest when that representation is not contemporaneous and "concluded long before [the defendant's case]." *Hillenbrand*, 121 Ill. 2d at 545. As we explained in *Hillenbrand*, a criminal defendant asserting the existence of a *per se* conflict "must show the attorney has a contemporaneous conflicting professional commitment to another." *Id.* at 544.

¶ 60     Our subsequent decision in *Hernandez* did not address *Hillenbrand*, let alone overrule it. Moreover, the facts of *Hernandez* are unique and distinguishable from *Hillenbrand* and the facts of this case. Hernandez's defense counsel was still the attorney of record for the victim at the time of Hernandez's trial. *Hernandez*, 231 Ill. 2d at 139. Hernandez's counsel also attested that he considered himself to be the victim's attorney while representing Hernandez. *Id.* Neither fact is present in this case.

¶ 61     We acknowledge that *Hernandez* stated that a *per se* conflict of interest exists "when defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution." *Id.* at 143. *Hernandez* also indicated that an attorney's "prior" or "previous" relationship with a victim of the

- 13 -

defendant's crime was sufficient to establish a *per se* conflict and that "no active representation [of the victim]" is required to establish a *per se* conflict. *Id.* at 151.

¶ 62    We agree with the State, however, that none of the cases cited or discussed in *Hernandez* involved defense counsel's prior or previous representation of the victim. Because *Hernandez* involved counsel's contemporaneous representation of Hernandez and the alleged victim of his crime, any statements made by this court regarding counsel's "prior" or "previous" representation of the victim are nonprecedential *obiter dicta* unnecessary to our disposition. See *People v. Williams*, 204 Ill. 2d 191, 206 (2003) ("*Obiter dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case."); *People v. Flatt*, 82 Ill. 2d 250, 261 (1980) ("It is well settled that the precedential scope of a decision is limited to the facts before the court."). Accordingly, we believe that *Hernandez* should be viewed as recognizing a *per se* conflict only when defense counsel's representation of the victim is contemporaneous with counsel's representation of the defendant because those were the relevant controlling facts in *Hernandez*.

¶ 63    We find further support for our conclusion that *Hernandez* should be viewed as a contemporaneous representation case based on its analysis of the United States Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162 (2002). In *Hernandez*, this court observed that, while *Mickens* held that a criminal defendant must generally show prejudice when alleging that his counsel represented both the defendant and the victim, *Mickens* recognized exceptions to that rule in circumstances when the verdict is so likely unreliable that a case-by-case determination is unnecessary. *Hernandez*, 231 Ill. 2d at 146 (citing *Mickens*, 535 U.S. at 166). One circumstance justifying application of that exception under *Mickens* occurs when defense counsel *actively* represents conflicting interests. *Id.*

¶ 64    Ultimately, we determined in *Hernandez* that Illinois's *per se* conflict rule "comports" with *Mickens*'s exception because "[w]here, as here, an attorney represents both the defendant and the alleged victim of defendant's crime, there is a high probability of prejudice to a defendant and an equally high degree of difficulty of proving that prejudice." *Id.* Notably, we concluded in *Hernandez* that the rationale for Illinois's *per se* conflict rule "remains valid, particularly where, as here, counsel *simultaneously* represents both the alleged perpetrator and the alleged victim of the crime being prosecuted." (Emphasis added). *Id.* at 147.

¶ 65    For these reasons, we modify our holding in *Hernandez* to recognize a *per se* conflict based on defense counsel's representation of the victim only when that representation is contemporaneous with counsel's representation of the criminal defendant. Accord *Hillenbrand*, 121 Ill. 2d at 545 (finding no *per se* conflict of interest when, in relevant part, defense counsel's previous representation of the victim had "concluded long before" defendant committed his crime against the victim).

¶ 66    With this modification, our caselaw now recognizes only three categories of *per se* conflict of interest: (1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant. If an alleged conflict of interest does not fit into one of these *per se* conflict categories, a defendant may still assert a claim of actual conflict of interest. *In re Br. M.*, 2021 IL 125969, ¶ 60 (citing *Hernandez*, 231 Ill. 2d at 144). Defendant, however, does not claim Rau suffered from an actual conflict of interest in this case.

¶ 67                                    III. CONCLUSION

¶ 68    Because Rau's representation of the victim was not contemporaneous with his representation of defendant, we reject the appellate court's conclusion that a reversible *per se* conflict of interest exists as a matter of law. 2020 IL App (4th) 190333-U, ¶ 51. Accordingly, we reverse the appellate court's judgment, which reversed the judgment of the circuit court.

¶ 69    Appellate court judgment reversed.

¶ 70    Circuit court judgment affirmed.