NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220604-U

NO. 4-22-0604

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 4, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JASON RANDOLPH, | ) | No. 19CF1579 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defense counsel did not have a *per se* conflict of interest, and defendant failed to
        show he was denied effective assistance of counsel for counsel's failure to
        investigate defendant's alibi witnesses.

¶ 2     In February 2020, a grand jury indicted defendant, Jason Randolph, with one count of home invasion (720 ILCS 5/19-6(a)(2) (West 2018)), one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)), two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)), and one count of unlawful restraint (720 ILCS 5/10-3(a) (West 2018)). After a June 2020 jury trial, the jury found defendant not guilty of aggravated domestic battery but guilty of the four other charges. Thereafter, defense counsel filed a motion for a new trial, and defendant filed *pro se* a motion to dismiss counsel. After an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), the Winnebago County circuit court appointed defendant new counsel. New counsel filed an amended motion for a new trial and an

addendum. However, defendant chose to proceed *pro se* and filed his own amended motion for a new trial. He later filed an addendum. In January 2022, the court held a hearing on defendant's amended motion for a new trial and its addendum and denied it. At the May 2022 sentencing hearing, defendant was again represented by counsel. The court found the unlawful restraint count merged with one count of domestic battery and sentenced defendant to concurrent prison terms of 10 years for home invasion and 6 years on each count of domestic battery. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 3        Defendant appeals, contending he is entitled to a new trial because trial counsel (1) operated under a *per se* conflict of interest and (2) was ineffective by not investigating defendant's alibi witnesses. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        The grand jury indictments alleged the crimes took place on June 23, 2019, and the victim was Jennifer Salcedo. Assistant Public Defender Anne Stevens represented defendant from his arraignment on the indictments until postjudgment proceedings.

¶ 6        Before trial, the State filed numerous motions *in limine*, including one seeking to admit certified documentation of three of defendant's prior convictions for domestic violence related charges and substantive evidence of the facts and circumstances of those offenses to argue defendant's propensity to commit acts of domestic violence against Salcedo pursuant to sections 115-7.4(a) and 115-20(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4(a), 115-20(a) (West 2018)). One of the three convictions the State sought to admit was defendant's aggravated battery conviction in Winnebago County case No. 17-CF-519. In June 2020, the trial court held a hearing on the motions *in limine*. Stevens objected to the aforementioned motion, asserting the admission of the prior convictions was very prejudicial to

- 2 -

defendant. The court granted the motion and allowed the admission of the three convictions, guilty pleas, bills of indictment, and the factual circumstances of the crimes. However, it emphasized the State could not present a bill of indictment for a charge to which defendant had not been found guilty. After the hearing, Stevens filed a motion seeking to exclude the admission of the charge to which defendant pleaded guilty in case No. 17-CF-519. In that case, the charge to which defendant pleaded guilty was an amended one, and the original charge was still visible because the amended charge was simply handwritten notations on the original charge. The court agreed with Stevens about the visibility of the original charge and suggested the attorneys come up with a solution. The parties agreed some of the other-crimes evidence would be admitted through a stipulation. As to case No. 17-CF-519, the stipulation stated the following: "That the defendant, Jason Randolph, has previously been convicted of the offense of aggravated battery to Jennifer Salcedo which occurred on February 19, 2017 in Winnebago County, IL case number 17CF519."

¶ 7 At defendant's June 2020 jury trial, the State presented the testimony of Salcedo; Bonnie Birkett, Salcedo's mother; Officer Lucas Davidson; and Lieutenant Jeffrey Hodges. The State presented numerous photographs of Salcedo, her home, and text messages between Salcedo and Shannon Kirchner, defendant's cousin. In addition to the aforementioned stipulation about other-crimes evidence, certified convictions for defendant's three prior convictions related to acts of domestic violence were also admitted. The evidence relevant to the issues on appeal follows.

¶ 8 Salcedo testified defendant was her boyfriend for four years and they had lived together in the upstairs apartment at 1912 Douglas Street in Rockford, Illinois. On June 23, 2019, Salcedo and defendant had not been in a relationship for a while and defendant was no longer living with Salcedo on Douglas Street. On that afternoon, Salcedo had been texting

Kirchner and defendant's uncle, Eugene Schultz, about picking up a few of defendant's belongings. State's exhibit No. 19 showed Salcedo sent her first text to them at 2:40 p.m., and Kirchner responded at 4:09 p.m., indicating she would pick up anything of value like movies and instructing Salcedo to throw out anything with no value.

¶ 9 At some point, Salcedo heard a knock at the door. When she looked out the window, she thought she saw Eugene's truck. When Salcedo opened the door, defendant was there, and she asked him to leave. Defendant pushed Salcedo down onto the stairs and locked the door. He put Salcedo's arms behind her back and led her up the stairs. Once in her apartment, defendant pushed Salcedo to the floor and began punching Salcedo in the face and on her sides. Defendant then grabbed an extension cord, which he wrapped around Salcedo's neck and squeezed it. Defendant then tied up Salcedo's arms with a different extension cord and tied that extension cord to the coffee table. When she stopped fighting defendant, he tied her legs up with another extension cord. Defendant continued to squeeze the cord around her neck, which prevented her from breathing. While defendant was attacking her, he was calling Salcedo names and was angry at her for getting an order of protection. Defendant eventually left the room and said, " 'I'm going to come back and kill you.' " Salcedo was able to loosen her arms enough to use her Apple watch to call her mother, Bonnie Birkett. Birkett answered the call, and Salcedo told her to call 9-1-1 because defendant had been to her apartment and tied her up. State's exhibit No. 16 showed Salcedo called Birkett at 6:32 p.m. Salcedo estimated it was about an hour from when defendant showed up until she went to the hospital.

¶ 10 Birkett testified that, after talking with Salcedo, she told her husband to call 9-1-1 and ran to her car to drive to Salcedo's apartment. Birkett estimated it took her six minutes to get to Salcedo's apartment. When she entered Salcedo's apartment, Birkett observed Salcedo

lying on the floor with her hands and ankles bound. Salcedo's hands were bound to the coffee table, and Salcedo appeared to have been beaten up. Since no one else was at the apartment, Birkett called 9-1-1. Within five minutes, the paramedics arrived, and the police officers arrived within three minutes of the paramedics. Salcedo was taken to the hospital via ambulance. Birkett did not see defendant at Salcedo's apartment.

¶ 11    Lieutenant Hodges testified he was a firefighter and paramedic. At around 7 p.m. on June 23, 2019, he received a dispatch to 1912 Douglas Street. He arrived before the police officers. A woman met him at the curb and told him her daughter was upstairs, bound, and battered. Lieutenant Hodges went upstairs and observed Salcedo on the floor with her ankles and wrists bound. Her wrists were tied to the coffee table, and a cellphone charging cord was around her neck. Since Salcedo was not having trouble breathing, Lieutenant Hodges did not remove the cords. When the police arrived, he stepped back to allow them to secure the scene and take photographs. Thereafter, Lieutenant Hodges removed the cords and again assessed Salcedo. She had facial swelling and bruising.

¶ 12    Officer Davidson testified he was dispatched to the scene at 7:03 p.m. He also observed a cord around Salcedo's ankles, another cord around her wrists that was attached to the leg of the coffee table, and a third cord around her neck. Salcedo had bruising on her face and chin. Officer Davidson also observed Salcedo at the hospital. There, he observed Salcedo's face was swollen and she had bruising on her left cheek and chin.

¶ 13    As to the facts and circumstances underlying case No. 17-CF-519, Salcedo testified defendant and Brian Ninnis were living with her at 1912 Douglas Street. On February 19, 2017, Salcedo came home from work and defendant took her cellphone away from her. When she tried to get her cellphone back, defendant put his forearm around her neck and pulled

her into his chest. Salcedo could not breathe. Salcedo got free and ran into the bathroom. Defendant followed her into the bathroom and again put his forearm around her neck. She again could not breathe. Ninnis came into the bathroom and made defendant stop. Defendant told Salcedo he was going to kill her. The certified conviction noted the order of conviction for the aggravated battery was on March 12, 2018.

¶ 14 Defendant did not present any evidence. After hearing the parties' arguments, the jury found defendant not guilty of aggravated domestic battery but guilty of home invasion, unlawful restraint, and two counts of domestic battery.

¶ 15 Stevens filed a motion for a new trial. Defendant filed *pro se* a motion to dismiss counsel, asserting Stevens was ineffective for, among other things, failing to properly investigate defendant's alibi. Defendant contended Mike Kawalec and Mandi Whittmier would have testified that, on June 23, 2019, defendant was with them at a cookout and watching a paid World Wrestling Entertainment event. Defendant also noted Stevens prosecuted him in 2017. Defendant later filed a supplement to his motion to dismiss counsel. On August 28, 2020, the trial court commenced a *Krankel* inquiry into defendant's ineffective assistance of counsel claims. At the conclusion of the inquiry, the court appointed Paul Vella to represent defendant.

¶ 16 In November 2020, Vella filed an amended motion for a new trial raising seven contentions, which included a conflict of interest allegation and the failure to present an alibi defense with defendant's two alibi witnesses. In May 2021, Vella filed an addendum to the amended motion for a new trial, which identified the two alibi witnesses but noted no affidavits were available. In July 2021, defendant filed a *pro se* amended motion for a new trial, complaining of both Stevens's and Vella's representation of him. The trial court entered an order dismissing Vella as defendant's attorney and allowing defendant to proceed *pro se* on his

amended motion for a new trial. In October 2021, defendant filed an addendum to his amended motion for a new trial.

¶ 17    In January 2022, the trial court held a hearing on defendant's *pro se* amended motion for a new trial and addendum. At the beginning of the hearing, defendant explained he did not have any witnesses because he could not reach Kawalec and Whittmier and did not want Kirchner and Joseph Schultz, Eugene's brother, coming to court due to COVID-19. (Eugene had passed away.) The State noted it was giving defendant four signed and dated letters, which the State had received from Vella. Defendant examined the letters and chose to present the letters prepared by Kirchner and Joseph. The State sought to present the other two letters, both of which were prepared by Kawalec. The May 5, 2021, letter by Kawalec discussed the night defendant was at the home of Kawalec's parents and noted defendant came over between 11 and 11:30 p.m. The May 7, 2021, letter by Kawalec stated that, on June 23, 2019, defendant came over around 10 a.m., left around midafternoon, and came back sometime around 10 to 11 p.m. Kawalec did not know where defendant went but noted defendant was supposedly at his aunt's. Defendant objected to the admission of both letters, noting Kawalec had started using narcotics again. The court admitted Kawalec's letters over defendant's objection. During the proceedings, defendant presented other documents that are not relevant to the issues on appeal. Additionally, defendant testified on his own behalf and presented the testimony of Stevens. The testimony relevant to the issues on appeal follows.

¶ 18    Stevens testified defendant did ask her to look into an alibi defense. After an investigation, she decided such a defense would not be a prudent trial strategy. Defendant had informed her Kawalec, one of his alibi witnesses, had a serious narcotics problem, and Stevens did not think that would bolster defendant's credibility. Stevens testified defendant had said

Kawalec was a recovering addict. Stevens never contacted Kawalec. Stevens also recalled defendant mentioning a woman, who was Kawalec's girlfriend, but she could not recall her name. Additionally, Stevens remembered defendant had mentioned a Pay-Per-View event the evening of the alleged attack. She did look into it and confirmed a wrestling event did take place that night. Defendant also told her he left Kawalec and Whittmier due to rain because he was riding a mountain bike. Stevens confirmed it rained that evening. In addition to Kawalec's narcotics problem, Stevens had concerns about presenting the evidence about the mountain bike because defendant had made comments he could not get up and down stairs very well due to past injuries, knee surgeries, and his weight.

¶ 19     Furthermore, Stevens testified she worked in the Winnebago County State's Attorney's Office from August 2014 to March 2019. She began working in the public defender's office in April 2019 and returned to the state's attorney's office in May 2021. Stevens did not seek employment again with the state's attorney's office until after her representation of defendant ended. She also testified she received defendant's case after January 23, 2020, when she was employed by the public defender's office. Stevens was never involved in defendant's current case as a prosecutor. Moreover, Stevens denied having any type of contemporaneous or prior association with Salcedo.

¶ 20     Additionally, Stevens admitted she was the assistant state's attorney assigned to drug court when defendant had cases in that court. Defendant had cases in drug court from July 2017 to October 2017. Stevens explained a defendant could be sentenced to probation supervised by drug court. Such probation was intensive, with the defendant appearing at least once a week in court. Stevens noted drug court was generally not adversarial. The only hearings held in drug court were petitions to vacate probation. When defendant's cases were removed

from drug court in October 2017, Stevens had no more involvement with them. She did not conduct any trial preparation and was not involved in any trials or hearings in those cases. Stevens also testified she never met Salcedo. She denied Salcedo came into drug court and asked Stevens to drop the order of protection against defendant. Upon being assigned to defendant's current case, Stevens spoke with the public defender and another assistant public defender about whether a conflict of interest existed due to her involvement in defendant's criminal cases in 2017, and both said they did not believe there was a conflict. Stevens also spoke with defendant about the situation, and he was fine with Stevens representing him.

¶ 21 Defendant testified he was with Kawalec and Whittmier at the home of Kawalec's parents from 11 a.m. to around 8:30 p.m. on June 23, 2019. It was just the three of them. Defendant stated he had contact with Kawalec and Whittmier until his trial but had not been able to contact them since his guilty verdict.

¶ 22 The trial court announced its decision in March 2022, denying defendant's *pro se* posttrial motion. At defendant's request, the court appointed defendant counsel for sentencing. After a May 2022 hearing, the court found defendant's conviction for unlawful restraint merged with one of the domestic violence counts. The court then sentenced defendant to concurrent prison terms of 10 years for home invasion and 6 years for each count of domestic battery. All of the sentences were to run consecutively to defendant's five-year prison sentence in Winnebago County case No. 18-CF-2904. In June 2022, defendant filed a motion to reconsider his sentence, which the court denied on July 15, 2022.

¶ 23 That same day, defendant filed a notice of appeal. On July 26, 2022, defendant filed a timely amended notice of appeal in compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). See Ill. S. Ct. R. 606(d) (eff. Mar. 12, 2021); R. 303(b)(5) (July 1, 2017).

Accordingly, this court has jurisdiction of defendant's convictions and sentences under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 24                                    II. ANALYSIS

¶ 25                           A. *Per Se* Conflict of Interest

¶ 26          Defendant asserts his trial counsel operated under a *per se* conflict of interest because counsel prosecuted him in a prior criminal case, which the State had admitted in this case as evidence of defendant's propensity to commit domestic violence. The State disagrees, contending defense counsel did not personally prosecute defendant in the prior case and never prosecuted defendant in this case. When, as here, the underlying facts are undisputed, the question of whether a *per se* conflict exists presents a legal question, which we review *de novo*. *People v. Yost*, 2021 IL 126187, ¶ 35, 184 N.E.3d 269.

¶ 27          "A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *Yost*, 2021 IL 126187, ¶ 36. "Illinois law recognizes two types of conflict of interest—actual and *per se*." *Yost*, 2021 IL 126187, ¶ 37. In this case, defendant only asserts a *per se* conflict of interest. "A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict." *Yost*, 2021 IL 126187, ¶ 39. It generally "arises when defense counsel has a connection to a person or entity that would benefit from an unfavorable verdict for the defendant." *Yost*, 2021 IL 126187, ¶ 39. When a *per se* conflict exists, the defendant does not have to show actual prejudice, and automatic reversal of the criminal conviction is required unless the defendant had waived his right to conflict-free counsel. *Yost*, 2021 IL 126187, ¶ 39. Our supreme court only recognizes the following three categories of a *per se* conflict of interest:

              "(1) when defense counsel has a contemporaneous association with the victim, the

prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *Yost*, 2021 IL 126187, ¶ 66.

In this case, defendant asserts his trial counsel fell under the third category.

¶ 28 In *People v. Alexander*, 2019 IL App (4th) 170425, ¶¶ 5, 18, 147 N.E.3d 935, this court addressed whether a defense counsel's status as a former prosecutor who appeared at the defendant's guilty-plea hearing in 2005, which was 10 years before the defendant's current charges, by itself, constituted a *per se* conflict. In rejecting the defendant's argument, this court construed the third category of *per se* conflicts to mean "such a conflict exists when defense counsel was a former prosecutor who had been personally involved with the prosecution of the defendant *in the very case in which the defendant was then on trial*." (Emphasis in original.) *Alexander*, 2019 IL App (4th) 170425, ¶ 21. In that case, no evidence showed defense counsel's former work as a prosecutor related in any way to the defendant's current prosecution, and thus the defendant did not come close to establishing a *per se* conflict of interest. *Alexander*, 2019 IL App (4th) 170425, ¶ 23. The facts in *Alexander* are similar to *People v. Franklin*, 75 Ill. 2d 173, 178-79, 387 N.E.2d 685, 687 (1979), which found no *per se* conflict where the defense counsel had less than five years earlier prosecuted and convicted the defendant on a prior charge but was not involved in the defendant's current case as a prosecutor.

¶ 29 In his briefs, defendant asserts his case is distinguishable from *Alexander* and *Franklin* and contends his defense counsel's status is more like the defense counsel who was a former prosecutor in the very same case because his defense counsel's role as a former prosecutor does have a connection to his current case. The case cited by defendant as most

factually similar to this matter is *People v. Everhart*, 405 Ill. App. 3d 687, 701, 939 N.E.2d 82, 94 (2010), in which the reviewing court found defense counsel's voluntary withdrawal due to a conflict of interest was proper. There, the defendant's original counsel had previously worked as an assistant state's attorney and had prosecuted the defendant in the prior case that was admitted as other-crimes evidence in his current case. *Everhart*, 405 Ill. App. 3d at 701, 939 N.E.2d at 94. After the trial court granted the State's motion to allow the other-crimes evidence, defense counsel voluntarily withdrew from the defendant's case, asserting a conflict of interest. *Everhart*, 405 Ill. App. 3d at 701, 939 N.E.2d at 94. As noted by the State, the reviewing court in *Everhart* did not address whether a *per se* conflict existed.

¶ 30        Defendant also cites *People v. Kester*, 66 Ill. 2d 162, 168, 361 N.E.2d 569, 572 (1977), and *People v. Lawson*, 163 Ill. 2d 187, 214, 644 N.E.2d 1172, 1185 (1994), both of which involved a defense counsel who also appeared as a prosecutor in the *very same case*. In *Kester*, 66 Ill. 2d at 164, 361 N.E.2d at 570, the defense counsel made numerous appearances on behalf of the State after the defendant was indicted by the grand jury and was present on behalf of the State when the defendant was furnished a copy of the indictment. Defense counsel then left the state's attorney's office and went to the public defender's office, where he was given the duty of representing defendant on the same indictment. *Kester*, 66 Ill. 2d at 164, 361 N.E.2d at 570. In finding a *per se* conflict of interest, the supreme court explained that, with such a situation, a possibility existed defense counsel "might be subject to subtle influences which could be viewed as adversely affecting his ability to defend his client in an independent and vigorous manner." *Kester*, 66 Ill. 2d at 167, 361 N.E.2d at 572. The *Kester* court gave the example that defense counsel may be subliminally reluctant to attack pleadings or other decisions by the prosecution which he or she may have been personally involved with or responsible for. *Kester*,

- 12 -

66 Ill. 2d at 167, 361 N.E.2d at 572. Additionally, in response to the State's argument defense counsel only appeared in routine matters while a prosecutor, the supreme court was not persuaded an inquiry into the precise nature and extent of defense counsel's personal involvement was either necessary or desirable, given defense counsel had "repeatedly appeared on behalf of the State in the particular case in which he is now representing [the] defendant." *Kester*, 66 Ill. 2d at 168, 361 N.E.2d at 572. In *Lawson*, 163 Ill. 2d at 206, 644 N.E.2d at 1181, the defense counsel had appeared on behalf of the State at the defendant's arraignment in the same criminal proceeding. The *Lawson* court found that, like in *Kester*, the defense counsel could have developed " 'subliminal reluctance to attack pleadings or other actions and decisions by the prosecution which *he may have been personally* involved with or responsible for.' " (Emphasis in original.) *Lawson*, 163 Ill. 2d at 214, 644 N.E.2d at 185 (quoting *Kester*, 66 Ill. 2d at 167, 361 N.E.2d at 572).

¶ 31        Here, Stevens, defendant's trial counsel, had no involvement as a prosecutor in defendant's current case. In case No. 17-CF-519, which was admitted as other-crimes evidence in this case, Stevens was the prosecutor assigned to preside over drug court. The trial court reviewed the docket entries for case No. 17-CF-519, and only the trial court's description of those contents is presented on appeal. As the appellant, defendant bears the burden of providing this court with a complete record sufficient to support his claims of error, and thus any doubts that arise from the incompleteness of the record will be resolved against defendant. *People v. Lopez*, 229 Ill. 2d 322, 344, 892 N.E.2d 1047, 1060 (2008). According to the trial court, on April 13, 2017, Assistant State's Attorney Heather Kruse filed a motion to vacate defendant's probation based on two driving under the influence charges, a charge of disorderly conduct, and a violation of bail bond. On July 25, 2017, defendant consented to drug court and was released

from custody two days later. Stevens appeared as the prosecutor on 14 of defendant's court dates in drug court. Most of the hearing dates were status hearings. The court noted it did not appear Stevens conducted any hearings or trials or had personal contact with defendant or Salcedo as part of drug court. At the September 17, 2017, hearing, Stevens made an oral motion to revoke defendant's bond because he had been arrested on a new charge. At an October 3, 2017, Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference, defendant was discharged from drug court, and Stevens had no more involvement in defendant's case. In December 2017, a different prosecutor filed an amended petition to vacate probation. The trial evidence in this case also revealed an order of conviction for aggravated battery was entered on March 12, 2018.

¶ 32 Applying the case law to the aforementioned facts, we decline to deviate from our construction of the third category of *per se* conflicts set forth in *Alexander*, which limits the *per se* conflict to a defense counsel who was involved as a prosecutor in the case in which the defendant was on trial. See *Alexander*, 2019 IL App (4th) 170425, ¶ 21. The facts before us do not raise a concern about defense counsel having a subliminal reluctance to attack pleadings or other actions and decisions by the prosecution which she may have been personally involved with or responsible for. Since Stevens was never a formal prosecutor in this case, the language in *Kester* declining to examine the precise nature and extent of defense counsel's prior involvement as a prosecutor is not applicable here. From the trial court's description of Stevens's actions in case No. 17-CF-519, she played more of a supervisory role over defendant's case than a prosecutorial role. Based on the record before us, we disagree with defendant's assertion Stevens participated in securing defendant's conviction in case No. 17-CF-519. No evidence was presented Stevens participated in the proceedings in case No. 17-CF519 that led to defendant's indictment, the revocation of his probation, or his conviction. Furthermore,

defendant makes several assertions about Stevens's role at the Rule 402 conference. However, the court only noted defendant was discharged from drug court at a Rule 402 conference at which Stevens was present. The court's statements do not reveal what Stevens did at the Rule 402 conference. As such, the only adverse action against defendant on the record is Stevens's moving to revoke defendant's bond. Her representation of defendant in this case did not require her to attack her decision to seek revocation of defendant's bond in case No. 17-CF-519. Thus, the concerns raised in *Kester* and *Lawson* are not present here.

¶ 33 Accordingly, we find the trial court did not err by concluding Stevens's representation of defendant did not give rise to a *per se* conflict.

¶ 34 B. Ineffective Assistance of Counsel

¶ 35 Defendant also asserts he was denied effective assistance of counsel because counsel "failed to investigate" defendant's alibi witnesses. The State disagrees. Our review of an ineffective assistance of counsel claim is *de novo*. *People v. Hale*, 2013 IL 113140, ¶ 15, 996 N.E.2d 607.

¶ 36 This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong

presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 37   Defendant fails to establish the prejudice prong of the *Strickland* test. "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81, 25 N.E.3d 526. The testimony at trial showed Salcedo was attacked sometime between 6 and 6:30 p.m. on June 23, 2019. At the hearing on the posttrial motion, defendant testified he was with Kawalec and Whittmier from 11 a.m. to around 8:30 p.m. that day. However, he did not present any evidence Kawalec and Whittmier would have testified defendant was in fact with them during that period. He blames Stevens's failure to investigate his alibi witnesses for the lack of evidence. However, the State did present two unsworn, handwritten notes from Kawalec, indicating defendant was not with Kawalec at the time Salcedo was attacked. Defendant's appointed counsel on his posttrial motion had obtained the notes. In the notes, Kawalec stated defendant came over around 10 a.m. on that day, left midafternoon, and did not return until between 10 and 11 p.m. While defendant claims he could not contact Kawalec and Whittmier, appointed counsel was able to make contact with Kawalec, as evidenced by the handwritten notes. As to his claim Kawalec changed his story, defendant presented no other evidence supporting his self-serving assertion Kawalec changed his story about defendant's presence on

June 23, 2019, because Kawalec had started using drugs again after defendant's trial.  Thus, defendant's suggestion Kawalec and Whittmier would testify defendant was with them at the time of the attack on Salcedo is pure speculation.  We note defendant chose to proceed *pro se* on his posttrial motion and dismiss the attorney appointed to assist him with his posttrial motion.  As a result, any failure to present supporting evidence was defendant's fault, and we disagree with his attempts to bootstrap the blame onto Stevens.

¶ 38   Since defendant failed to establish prejudice, the trial court properly denied his ineffective assistance of counsel claim.

¶ 39         III. CONCLUSION

¶ 40   For the reasons stated, we affirm the Winnebago County circuit court's judgment.

¶ 41   Affirmed.