2024 IL App (1st) 221462-U

FIFTH DIVISION
March 15, 2024

No. 1-22-1462

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 10307 |
| | ) | |
| STEPHANE EDOUARD, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: The summary dismissal of defendant's *pro se* postconviction petition is reversed and remanded for second stage proceedings where defendant sufficiently alleged the gist of a claim that his trial counsel suffered from an actual conflict of interest that adversely affected counsel's representation of defendant at trial.

¶ 2    Defendant Stephane Edouard was convicted of aggravated criminal sexual assault and aggravated battery. He was sentenced to consecutive prison terms of 27 years for the aggravated criminal sexual assault and 14 years for the aggravated battery. Mr. Edouard filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)),

alleging that (1) a conflict of interest stemming from his trial counsel having an affair with Mr. Edouard's then-fiancée led him to receive ineffective assistance of counsel; (2) his right to due process was violated when he was isolated and forced to sit separately from the rest of the courtroom during trial; and (3) trial counsel was ineffective for failing to file a motion to quash Mr. Edouard's warrantless arrest based on an investigative alert. Because we find that Mr. Edouard stated the gist of a claim that his attorney had an actual conflict, we reverse and remand for second stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Trial Proceedings

¶ 5     Mr. Edouard was charged with the aggravated criminal sexual assault and criminal sexual assault of M.D., and the aggravated battery of Adam Poss, based on events that occurred in the early morning hours of May 16, 2014. The appeal before us is based on these charges.

¶ 6     While Mr. Edouard was awaiting trial on those charges and had been released on bond, he was charged with new unrelated criminal charges of aggravated domestic battery, aggravated criminal sexual assault, and unlawful restraint of his then-fiancée, who is identified in the record as Heike Folsch (also spelled Foelic and Fuelsch). The State alleged that Mr. Edouard had held Ms. Folsch against her will for over 12 hours, threatened to kill her and himself, strangled her multiple times, and "sexually penetrated her both orally and vaginally using the threat of force."

¶ 7     The trial court in the case before us was advised that Ms. Folsch had put up some of the bond money for Mr. Edouard on his original charges and an agreement was reached that those funds would be released to her and Mr. Edouard would be held without bond.

¶ 8     The trial on the original charges was held over three days in May 2017. We discussed the trial proceedings in detail in our order on direct appeal, *People v. Edouard*, 2021 IL App (1st)

180494-U, and summarize that evidence here again only as necessary for an understanding of the current appeal.

¶ 9    The evidence at trial showed that M.D. and Mr. Poss met Mr. Edouard at a party in Chicago late at night on May 15, 2014. Mr. Edouard asked M.D. if she "wanted to party," which she understood to be him asking if she wanted to "do some cocaine." M.D. and Mr. Poss went with Mr. Edouard to his car, got in, and took the drugs that Mr. Edouard offered them. M.D. was unable to stay awake, and when she awoke, she was in Mr. Edouard's car, with her pants off and Mr. Edouard on top of her, inserting his penis into her vagina. Mr. Edouard drove M.D. to Mr. Poss's building, where she got out of the car. M.D. was taken to the hospital. M.D.'s blood was positive for opiates, negative for cocaine, and had a blood alcohol content (BAC) of .018.

¶ 10    Mr. Poss testified that, after he took the drugs from Mr. Edouard, he looked out the window and the next thing he remembered was waking up in the hospital. Mr. Poss was found in an alley at approximately 5:16 a.m. on May 16, 2014, by a paramedic in response to a call of a "person down from unknown cause." He was hypothermic with shallow breathing and opioid toxicity, his urine was positive for opiates and negative for cocaine, and his BAC was .0686.

¶ 11    Other-crimes evidence was introduced through two witnesses, L.C. and C.R., who testified that they met Mr. Edouard when he offered them a ride home. In the car, he offered them a bottle of Gatorade from his trunk that appeared to have already been opened. After L.C. and C.R. drank from the bottle, they blacked out. They both awoke in an alley without their purses or phones and were taken to the hospital.

¶ 12    The jury found Mr. Edouard guilty of criminal sexual assault, aggravated criminal sexual assault, and aggravated battery. The trial court merged the first two charges and sentenced Mr. Edouard to 27 years in prison for the charge of aggravated criminal sexual assault and 14 years for

the charge of aggravated battery, to run consecutively.

¶ 13                                    B. Direct Appeal

¶ 14    On direct appeal, Mr. Edouard argued that (1) the trial court erred in admitting the evidence of other crimes and (2) he received ineffective assistance because his trial counsel presented evidence through stipulation rather than live testimony and did not request a jury instruction on prior inconsistent statements. *Edouard*, 2021 IL App (1st) 180494-U, ¶ 2. On September 30, 2021, we affirmed. *Id.*

¶ 15                            C. Postconviction Proceedings

¶ 16    On December 8, 2021, Mr. Edouard filed a *pro se* postconviction petition arguing, in relevant part, that (1) his trial counsel had a conflict of interest because counsel was having an affair with Mr. Edouard's then-fiancée, and his representation of Mr. Edouard suffered as a result; (2) his right to due process was violated when he was isolated and forced to sit separately from the rest of the courtroom; and (3) counsel was ineffective for failing to file a motion to quash Mr. Edouard's warrantless arrest based on an investigative alert.

¶ 17    Mr. Edouard alleged that on June 24, 2016, he found out that his trial counsel "was engaged in a sexual romantic relationship with his fiancé[e], [Ms. Folsch]." Mr. Edouard said that "[t]he revelation of this knowledge led to an argument," which resulted in the allegations regarding his assault of Ms. Folsch. "At this point, [trial counsel] should have withdr[awn] from the case and brought the per se conflict of interest to the attention of the trial court," Mr. Edouard argued, but instead, "under the threat of sabotaging [Mr. Edouard's] case, and leaving him with a public defender," trial counsel told Mr. Edouard "to plead guilty to domestic battery in the new case, and not to interfere with any decision making in the instant case." Mr. Edouard alleged that his trial counsel's interests were clearly "divided [between] his newfound romance with his client's

fiancé[e], and [Mr. Edouard], as is evident from the incredibly inadequate level of assistance he provided to [Mr. Edouard]."

¶ 18 Mr. Edouard then listed the ways in which he believed the affair affected trial counsel's performance, including causing him to (1) fail to object to Nyree Zyrga being on the jury when she was a professor at Northwestern University who worked in the same department as Ms. Folsch, (2) coerce Mr. Edouard to not testify, (3) choose to impeach the other crimes witnesses by stipulation rather than by live testimony, and (4) not pursue a mitigation expert for sentencing.

¶ 19 Mr. Edouard also alleged that his trial counsel and his two prior attorneys were all ineffective for failing to present him with a plea offer. According to Mr. Edouard, the State shared a plea offer with his initial defense counsel, who shared it with his subsequent counsel, who shared it with his trial counsel, but that none of these attorneys shared it with him. Mr. Edouard said he was prejudiced by this failure because "he likely would have received a lesser sentence had he entered into a plea bargain with the State."

¶ 20 In support of his claim that he was isolated during trial, Mr. Edouard alleged that "[d]uring the entire course of the trial, [he] was made to sit by himself, though he was never disruptive, or an escape risk," which "prevented [him] from conferring with his attorney during trial, and had a prejudicial effect against him where the jury [was] concerned."

¶ 21 Mr. Edouard also argued that his arrest was made illegally pursuant to an investigative alert rather than a warrant and each of his lawyers should have filed a motion to quash it and suppress the evidence.

¶ 22 On February 28, 2022, the circuit court summarily dismissed Mr. Edouard's petition in a written order. The court found that Mr. Edouard had failed to show his trial counsel suffered from a *per se* or actual conflict of interest. The court noted that Mr. Edouard "pleaded guilty to the

sexual assault of the above alleged paramour (case # 16CR11505, attached) for an agreed upon sentence of five years," that sentence was "to run consecutively to the sentence imposed in the instant case," that trial counsel "was [Mr. Edouard's] lawyer in both cases," and that trial counsel did not represent Mr. Edouard's "paramour" in either case. The court also found that Mr. Edouard "merely indicate[d] that had his lawyer(s) sought a plea bargain that he would have considered it and likely have gotten a lesser sentence" but did "not state or even suggest that his lawyer(s) had a plea offer and did not convey it to him." The court concluded that the claim of ineffective assistance of counsel was meritless.

¶ 23     In response to Mr. Edouard's claim that he was kept isolated, the court said, "The record contradicts this allegation. The court presided over the trial and emphatically maintains that this allegation is baseless." The court also viewed this claim as forfeited, as it could have been raised on direct appeal. In addition, the court found that Mr. Edouard's lawyers were not ineffective for failing to file a motion to suppress based on the fact that his arrest was pursuant to an investigative alert.

¶ 24     This appeal followed.

¶ 25                                    II. JURISDICTION

¶ 26     The circuit court summarily dismissed Mr. Edouard's petition on February 28, 2022, and this court gave Mr. Edouard leave to file a late notice of appeal from that dismissal on October 3, 2022. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 606 (eff. March 12, 2021) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 27                                    III. ANALYSIS

¶ 28    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) allows a criminal defendant to challenge his or her conviction by establishing that "in the proceedings which resulted in [the] conviction there was a substantial denial of his or her rights under the Constitution of the United States or the State of Illinois or both." *Id.* § 122-1(a)(1). Postconviction proceedings occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines, without input from the State, whether a petition is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2020). If the petition is advanced to the second stage, the court appoints counsel to represent the defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122-4, 122-5 (West 2020). If the defendant then makes a substantial showing of a constitutional violation, they proceed to the third and final stage, an evidentiary hearing on the merits. *People v. Tate*, 2012 IL 112214, ¶ 10; 725 ILCS 5/122-6 (West 2020)).

¶ 29    "A post-conviction petition is considered frivolous or patently without merit" at the first stage of proceedings "only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239, 244 (2001) (quoting *Gaultney*, 174 Ill. 2d at 418). We review the summary dismissal of a petition *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 30    On appeal, Mr. Edouard argues that his postconviction petition presented the gist of a claim that (1) he received ineffective assistance of counsel because his trial counsel had an actual conflict because he was having an affair with Mr. Edouard's then-fiancée; (2) his right to due process was violated when he was isolated and forced to sit separately from the rest of the courtroom; and

(3) counsel was ineffective for failing to file a motion to quash Mr. Edouard's arrest and suppress the evidence that resulted from the arrest. Because we find that Mr. Edouard stated the gist of a claim that his trial counsel had an actual conflict, we have no reason to consider either of Mr. Edouard's other postconviction claims. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001) (partial dismissals of a postconviction petition at the first stage of proceedings "are not permitted under the Act").

¶ 31     Initially, the State argues that because Mr. Edouard did not attach any documents or affidavits to his petition, and did not explain the absence of such evidence, "his claim is necessarily frivolous, and subject to summary dismissal on that basis alone." See *People v. Collins*, 202 Ill. 2d 59, 66 (2002) ("the failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal [citations]" (internal quotation marks omitted)). We reject this argument.

¶ 32     Our supreme court has made clear that the "[f]ailure to attach independent corroborating documentation or explain its absence may, nonetheless, be excused where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." *People v. Hall*, 217 Ill. 2d 324, 333 (2005).

¶ 33     Mr. Edouard's *pro se* petition consisted of a one-page form that he filled out by hand and a 34-page handwritten narrative explaining his claims. He also included a verifying affidavit that he signed and had notarized, attesting: "All of the facts presented in this Petition are true and correct to the best of my recollection." Thus, he attested to his own allegations. The only other people who might have supported his allegations were his trial counsel or Ms. Folsch. As to both of these potential witnesses, "[t]he difficulty or impossibility of obtaining such an affidavit is self-

apparent." *People v. Williams*, 47 Ill. 2d 1, 4 (1970). The lack of supporting affidavits in this instance is not a basis on which we will dismiss this petition.

¶ 34    We now turn to the substance of Mr. Edouard's allegations, which we must take as true at the first stage of proceedings. *Edwards*, 197 Ill. 2d at 244. "A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *People v. Yost*, 2021 IL 126187, ¶ 36. This "guarantee of conflict-free representation ensures that a defendant is provided assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." (Internal quotation marks omitted.) *Id.* "Essentially, the party asserting such a claim is arguing that a conflict rendered the attorney's performance substandard and that the substandard performance caused prejudice." (Internal quotation marks omitted.) *Id.* First, we consider whether Mr. Edouard has sufficiently alleged that his trial counsel had a conflict.

¶ 35                    A. Whether Trial Counsel Had an Actual Conflict

¶ 36    Initially, the State argues that Mr. Edouard waived any conflict because, according to his postconviction petition, he became aware of the relationship between his attorney and his fiancée on June 24, 2016, almost a full year before trial began. But even though "[t]he right to conflict-free counsel may be waived," that "waiver must be knowing." *People v. Olinger*, 112 Ill. 2d 324, 339 (1986). Courts "indulge every reasonable presumption against [a] defendant's waiver" (*People v. Acevedo*, 2018 IL App (2d) 160562, ¶ 18), and our supreme court has made clear that "[a] defendant will not be deemed to have waived a conflict unless he is admonished as to the existence of the conflict and its significance" (*Olinger*, 112 Ill. 2d at 339). In this case, there is nothing to suggest that such admonishment was given.

¶ 37    Illinois recognizes two kinds of conflicts of interest—*per se* and actual. *Id* ¶ 37. "A *per se*

9

conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict." *Id.* ¶ 39. Our supreme court has recognized a *per se* conflict of interest only in three specific circumstances: where defense counsel (1) "has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution;" (2) "contemporaneously represents a prosecution witness"; or (3) "was a former prosecutor who had been personally involved with the prosecution of [the] defendant." *People v. Fields*, 2012 IL 112438, ¶ 18.

¶ 38    Mr. Edouard does not argue on appeal that there was a *per se* conflict; he instead focuses on whether there was an actual conflict. Taking the allegations in Mr. Edouard's postconviction petition as true, we find he presented the gist of a claim that his trial counsel had an actual conflict based on his having an affair with Mr. Edouard's then-fiancée, who was also the victim in another subsequent case against Mr. Edouard.

¶ 39    Our supreme court has stated that "[a]n actual conflict generally, if not exclusively, involves joint or multiple representation" (*People v. Austin M.*, 2012 IL 111194, ¶ 82), but it has not expressly limited actual conflicts to those circumstances. Mr. Edouard argues that Illinois Rule of Professional Conduct 1.7, titled "Conflict of Interest: Current Clients," provides support. That rule states, in relevant part, that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" and that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited *** by a personal interest of the lawyer." Ill. R. Prof. Conduct, 1.7(a)(2) (eff. Jan. 1, 2010). This rule, while not directly on point, recognizes that a personal interest of the lawyer—such as trial counsel's alleged personal interest in Ms. Folsch—can create a conflict even where there is no joint representation.

¶ 40    While Mr. Edouard was not able to provide Illinois cases on point, other jurisdictions have found a sexual relationship between an attorney and someone close to the attorney's client can create a conflict. See, *e.g.*, *Disciplinary Counsel v. Owen*, 30 N.E.3d 910, 916 (Ohio 2014) (finding that "a lawyer's sexual relationship with the spouse of a current client creates an inherent conflict of interest" and that such a "conflict of interest compromises the relationship of trust and confidence between the attorney and client"); *State v. Lasane*, 852 A.2d 246 (N.J. Super. 2004) (allowing a defendant to withdraw his guilty plea after finding a conflict of interest existed where defense counsel had a " 'one-time sexual encounter' " with the juvenile defendant's mother and the mother encouraged the defendant to plead guilty).

¶ 41    In *People v. Singer*, 275 Cal. Rptr. 911, 921 (Cal. Ct. App. 1990), the California Court of Appeal put it like this: "There appears to be no direct precedent holding that an affair with a client's spouse raises a conflict of interest. However, such a conclusion is inescapable." That court continued:

> "[T]he relationship here between defense counsel and [the] defendant's wife deprived [the] defendant of his constitutional right to the 'undivided loyalty and effort' of his attorney. [Citation.] The validity of our adversarial system depends upon the guaranty of this 'undivided loyalty and effort' for every criminal defendant. Given the instant facts, a defense attorney, in the extreme, might be influenced to see his client convicted and imprisoned so that the affair can continue or remain undiscovered. *** At the very minimum these informed speculations, based upon the record, indicate the existence of a potential, prejudicial conflict.
>
> ***
>
> *** Given an undisclosed affair between the defendant's wife and his attorney, the

professional attorney-client relationship becomes tainted and interwoven with a romantic relationship. Strategic case decisions may have been made by defense counsel to favor the interests of the wife over those of the defendant, or to conceal the existence of the affair at defendant's expense. Either way a defendant is prejudiced by failing to have counsel unencumbered by potential divided loyalties." *Id.* at 921-22.

¶ 42 Although cases from foreign jurisdictions are not binding on this court, and each of these cases may be factually distinguishable, they may have persuasive value. *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 54. The alleged sexual relationship between Mr. Edouard's trial counsel and his one-time fiancée, who was also the victim in a separate criminal case against him, could have diluted his trial counsel's allegiance to him.

¶ 43 At this stage, where a defendant need only show the gist of a claim, we find that Mr. Edouard sufficiently alleged that his trial counsel had a conflict of interest.

¶ 44     B. Whether Counsel's Performance Was Adversely Affected by the Conflict

¶ 45 For an actual conflict, as opposed to a *per se* conflict, the defendant must also "point to "a specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict." *Yost*, 2021 IL 126187, ¶ 38.

¶ 46 We note that the rationale for finding a *per se* conflict might apply here. As our supreme court has noted, "defense counsel's association with or connection to the victim, the prosecution, or a prosecution witness may have a subtle or subliminal effect on counsel's performance that is difficult to detect and demonstrate, which justifies application of the *per se* conflict." *Id.* ¶ 40. Although there is no allegation that trial counsel represented Ms. Folsch, the effect that trial counsel's relationship with Ms. Folsch had on his performance as Mr. Edouard's lawyer could surely have been present.

¶ 47 Mr. Edouard points to several decisions his trial counsel made that he argues show the conflict affected his counsel's performance. We will focus on the two allegations we find have the most potential to be meritorious: (1) that his trial counsel did not present him with a plea offer from the State; and (2) that his lawyer's performance at sentencing was deficient.

¶ 48 We have recognized that a defendant has the right to decide whether to plead guilty, and an attorney's failure to communicate a plea offer to the defendant may thus give rise to a claim of ineffective assistance of counsel. *People v. Trujillo*, 2012 IL App (1st) 103212, ¶ 9. In his petition, Mr. Edouard alleged that trial counsel knew about a plea offer that he never relayed.

¶ 49 Mr. Edouard also points to trial counsel's performance at Mr. Edouard's sentencing hearing. Mr. Edouard was found guilty of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(7) (West 2014)), a Class X felony (*id.* § 11-1.30 (d)(1)) with a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2014)). He was also found guilty of aggravated battery (720 ILCS 12-3.05(g)(1) (West 2014)), a Class 1 felony (*id.* § 12-3.05(h)) with a sentencing range of 4 to 15 years (730 ILCS 5/5-4.5-30(a) (West 2014)). In addition, these two sentences were statutorily mandated to run consecutively. *Id.* § 5-8-4(d)(2). Mr. Edouard was thus facing an aggregate sentence ranging from 10 to 45 years in prison. Mr. Edouard received a total sentence of 41 years in prison, just four years short of the very lengthy maximum possible.

¶ 50 This was an ugly crime with compelling witnesses. The State gave an extremely detailed presentation in aggravation, including presenting new evidence of Mr. Edouard's deviant sexual behavior and lengthy statements from each of his victims. Mr. Edouard needed vigorous representation at the sentencing hearing to overcome this. Instead, Mr. Edouard alleged in his petition that he had lukewarm advocacy at best.

¶ 51 Mr. Edouard's trial counsel made a request eight months after the trial ended, at the date

that had been scheduled for the sentencing hearing, for a continuance to obtain a psychological evaluation that might provide mitigation. At that point, the trial court understandably refused. Counsel began his presentation by acknowledging that Mr. Edouard had a prior criminal history and saying that Mr. Edouard "would not necessarily be eligible for the lowest possible sentence." Counsel failed to argue that the criminal history was primarily nonviolent and included no prison time. Counsel asked for a "a sentence in the middle of the range."

¶ 52    At this early stage of postconviction proceedings, Mr. Edouard need only show the gist of a claim that his trial counsel's performance resulted in deficient representation. The unconveyed plea offer and the performance at sentencing—either of which might have been a result of trial counsel's conflicted loyalties—are sufficient to meet this low standard.

¶ 53    While Mr. Edouard makes additional claims in his postconviction petition, there is no reason to reach these. Because we have found that Mr. Edouard stated the gist of a sixth amendment claim that his counsel operated under an actual conflict, the petition goes forward to the second stage, where it can be amended by counsel. *Rivera*, 198 Ill. 2d at 374.

¶ 54                                    IV. CONCLUSION

¶ 55    For the foregoing reasons, we reverse the circuit court's summary dismissal of Mr. Edouard's postconviction petition and remand for second stage proceedings.

¶ 56    Reversed and remanded.