NOTICE
Decision filed 09/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230568-U

NO. 5-23-0568

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 13-CF-345 |
| | ) | |
| JAMES J. CHATMAN, | ) | Honorable |
| | ) | James R. Coryell, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Hackett* concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The defendant was denied reasonable assistance of postconviction counsel.

¶ 2    The defendant, James J. Chatman, appeals from an order of the circuit court of Macon County granting the State's motion to dismiss his postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2024)) at the second stage of proceedings. The defendant contends that he made a substantial showing of ineffective assistance of trial counsel and appellate counsel; and alternatively, that he was denied reasonable assistance of postconviction counsel. For the following reasons, we reverse and remand with instructions.

---

*Justice Welch participated in oral argument. Justice Hackett was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

1

¶ 3                                    I. BACKGROUND

¶ 4      Following a bench trial, the defendant was convicted of first degree murder and unlawful possession of a weapon by a felon. He was sentenced to 60 years in the Illinois Department of Corrections (IDOC) for first degree murder with an additional 25-year firearm enhancement, as well as 2 years for unlawful possession of a weapon by a felon, to be served consecutively. The defendant directly appealed the judgment of conviction and sentencing decision. The details of the defendant's conviction were set forth in *People v. Chatman*, 2019 IL App (4th) 170220-U. For context, we summarize the facts and procedural history that are relevant to the postconviction issues raised on appeal.

¶ 5      On March 10, 2013, the defendant fired multiple shots from the hallway of an apartment into a bedroom. James Nathaniel Johnson, who was behind the closed bedroom door, was struck by a bullet and died. Kioshe McGowan was present in the bedroom with Johnson. Multiple other people, who had been smoking crack and/or using heroin on the day of the shooting, were present in the apartment.

¶ 6      At least five different attorneys were appointed and subsequently withdrew as counsel for the defendant for various reasons. Daniel Hassinger (trial counsel) was appointed on December 18, 2015, and he remained as the defendant's trial counsel until appellate counsel was appointed on direct appeal.

¶ 7      On February 2, 2016, trial counsel filed a motion to have gunshot residue testing performed on the evidence collected from the crime scene. The defendant argued that it was "essential to the Defendant's defense" to test items, including Johnson's clothing, Johnson's nail clippings, and brown paper bags that Johnson's hands had been placed in before the autopsy. The circuit court entered an agreed order on April 14, 2016, to have said items tested.

¶ 8    During two pretrial conferences, trial counsel informed the circuit court of his candidacy for the Macon County State's Attorney's office. Trial counsel also indicated that the defendant wished to withdraw the motion for gunshot residue testing because the trial had been delayed. The circuit court addressed whether the defendant wanted to move forward with trial without the gunshot residue test results. The defendant indicated that he wanted to set a trial date, but he also wanted the lab results. The defendant requested that if the results were not received by the trial date, that he should be allowed to make an argument to the jury that the results had not been returned. The circuit court considered that if the laboratory results were not produced by the trial date, they would "cross that bridge when and if we get there." The circuit court reserved the issue of whether the defense would be allowed to comment on the lack of a gunshot residue report in the event that the crime lab had not completed its testing by the trial date.

¶ 9    The State emailed trial counsel on July 8, 2016, and informed him that the lab results would be processed by October 31, 2016. In response, trial counsel told the State that he would be on vacation at that time and through the November 8, 2016, election. Trial counsel was agreeable to an August 29, 2016, trial date.

¶ 10    The State subsequently filed a motion *in limine* to inquire whether trial counsel had a conflict of interest and to obtain a waiver of any potential conflict of interest from the defendant prior to trial. The State's motion included an issue with Johnson's father being an acquaintance of trial counsel, and that trial counsel had filed as a candidate for the position of the Macon County State's Attorney for the November 8, 2016, election.

¶ 11    The State emailed trial counsel on August 9, 2016, and advised that the crime lab would be able to process Johnson's sweatshirt and the bags on his hands for gunshot residue by August 29, 2016, but they did not have time to test the other items by that date. The State emailed trial

3

counsel again on August 10, 2016, and expressed concern on an ineffective assistance of counsel claim where trial counsel had requested the gunshot residue testing and was proceeding to trial without the results. The State suggested continuing the trial until September 26, 2016, as the results from the crime lab for the sweatshirt and bags from Johnson's hands would be available prior to that proposed trial date.

¶ 12    Trial counsel responded to the State's email and stated that the defendant would object to any continuances. The State then replied to trial counsel's email and stated, "he doesn't have the right to object to continuances, but he will have the right to claim that he was given bad legal advice in the event of a conviction regarding the GSR (gunshot residue)."

¶ 13    The circuit court held a hearing on August 18, 2016, which addressed the conflict of interest issues raised by the State. The circuit court addressed the defendant and the following transpired:

> "THE COURT: *** I'm just going to make sure that you are aware that [trial counsel] has put in to run for Macon County State's Attorney's Office. Are you aware of that?
>
> THE DEFENDANT: Yes, I'm aware of that. And me and my attorney and then— the last time I was in court, came to an agreement we was going to have a trial and get this over with. I have been here three and a half years, and we're going to get this over before that November thing even comes up. So that's why he's still my attorney. So that's what I'm here today for to get this trial date, keep going, and get this over with and done.
>
> THE COURT: Okay. [Defendant], so you would waive any potential conflict with [trial counsel] running for state's attorney?
>
> THE DEFENDANT: I'm not waiving nothing as far as that. Like I said, he's my attorney. He's been my attorney. *** And I don't have a problem with this, but I'm not signing any paperwork from here on concerning what the State's talking about now as far as some state's attorney—running for state's attorney. That didn't have nothing to do with my case. I'm here for trial and get this resolved and that's what I'm here for."

The circuit court found that the defendant was aware that trial counsel was running for the Macon County State's Attorney's office. The trial was then scheduled for September 26, 2016, and trial counsel continued to represent the defendant.

4

¶ 14    A laboratory report dated August 29, 2016, revealed that the brown paper bags recovered from Johnson's hands had not been examined for gunshot residue. Gunshot residue was not detected on Johnson's sweatshirt or from the sample taken from McGowan. Trial counsel did not seek a continuance and proceeded to trial on September 26, 2016.

¶ 15    At trial, the State presented a theory of the case that on March 10, 2013, the defendant went to the apartment with the intention of confronting Johnson for committing a wrongdoing against the defendant's son. The defendant claimed that he acted in self-defense and had only fired his weapon in response to being fired upon by Johnson. A primary issue at trial was whether Johnson had fired a gun at the defendant.

¶ 16    The State presented numerous witnesses who were present at the house on the night of the shooting. Law enforcement witnesses also testified. Three .380-caliber Federal cartridge cases were found in the hallway outside of the bedroom door, and three projectiles were found inside of the bedroom where Johnson was shot. The bedroom door had four bullet holes which were identified as having been fired into the bedroom. A small hole was found at the bottom of the bedroom door, which potentially could have been a gunshot hole fired from the inside of the bedroom outward toward the hall.

¶ 17    Master Sergeant Todd Hartman testified that the hole on the inside of the bedroom door appeared to have been made by a bullet that was smaller than a .22-caliber bullet. Hartman additionally testified that the hole could have been caused by a fragment of a bullet, but that would likely have caused a defect in the floor as well. A former firearm expert, Beth Patty, testified that there were guns, although uncommon, that used bullets which were smaller than a .22 caliber.

¶ 18    Testimony was presented that Johnson's hands had been placed in bags, and those bags were removed during the autopsy by Amanda Youmans, the forensic pathologist. The bags were

then given to a police officer to secure as evidence. Youmans testified that wrapping Johnson's hands in bags prevented the loss of trace evidence, such as gunshot residue. Youmans testified that she also provided Johnson's clothing, a DNA card, and fingernail clippings to the Decatur Police Department. No bullet holes were visible on the sweatshirt that Johnson had been wearing. Youmans did not perform a gunshot residue test on Johnson.

¶ 19    The Illinois State Police crime lab forensic scientist, Scott Rochowicz, testified that he performed gunshot residue testing. Generally, when conducting gunshot residue testing, Rochowicz determined whether three elements were present: antimony, barium, and lead. Rochowicz conducted a gunshot residue test on a black hooded sweatshirt and on a gunshot residue collection kit that was administered on Kioshe McGowan. Rochowicz's findings were negative for gunshot residue on the sweatshirt and for McGowan's kit. Rochowicz had also received the brown paper bags that had covered Johnson's hands, but he did not test the bags for gunshot residue because examining brown paper bags used to cover hands for gunshot residue was not within protocol. Rochowicz additionally testified that there were multiple exhibits that he had not received, including fingernail clippings, Nike shoes, socks, a black long-sleeved shirt, t-shirt, and pajama pants.

¶ 20    On cross-examination, Rochowicz was questioned on the delay of testing items for gunshot residue, and the following transpired:

"Q. In terms of duration of time, how does that effect the degradation of the sample, if any?

A. Time by itself will not have an impact on the samples. It's the activity done between the discharge of the firearm and the collection of the samples which would have the impact on the duration of gunshot residue.

Q. So if you received an item to perform analysis on that has been sealed, it should contain these three elements; is that correct?

A. Yes, that is correct."

After Rochowicz testified, the State played excerpts of multiple calls made by the defendant from the county jail. The defendant had asked his family and friends to provide drugs or money to eyewitnesses. Then, the State rested.

¶ 21    The defendant testified, in his own defense, that he went to the apartment with his brother, Anthony Chatman, for Anthony to sell drugs. Anthony, however, was not allowed inside of the apartment. The defendant went inside and spoke to Jimmy Mabon and Mabon asked the defendant for a drink of liquor that the defendant was carrying. They went into the kitchen for a cup and Johnson appeared. Johnson made a comment that the defendant interpreted as Johnson had paid to be the only person selling drugs in the apartment. Mabon waved off Johnson and Johnson responded that he was "on the C," meaning he was part of a gang. Johnson had moved to the doorway of a bedroom and told the defendant, "I'll light this b*** up and light your a*** up with it." Johnson then fired a shot at Mabon and the defendant. In response, the defendant pulled out his own firearm and started shooting as Johnson closed the bedroom door. The defendant testified that Johnson fired another shot and the defendant believed that Johnson was trying to kill him. The defendant's gun jammed, and he ran away. Trial counsel did not present additional witnesses, who were present on the night of the shooting, in support of the defendant's self-defense claim.

¶ 22    The circuit court found that the evidence did not support a self-defense claim, and the defendant was found guilty of first degree murder where the defendant had personally discharged a firearm, and unlawful possession of a weapon by a felon. The defendant subsequently filed a motion for a new trial and argued that the State had not submitted the items for gunshot residue testing in a timely manner. The State responded that the police department sent the requested items for testing four days after the agreed order was entered and that trial counsel was aware that the

7

gunshot residue testing had not been completed when the defense demanded to proceed with trial. The circuit court denied the defendant's motion for a new trial and sentenced the defendant to a total of 87 years in the IDOC.

¶ 23    On direct appeal, the defendant argued that trial counsel provided ineffective assistance by proceeding to trial without first investigating all possible exculpatory evidence. *Chatman*, 2019 IL App (4th) 170220-U. Specifically, trial counsel had personal concerns with an upcoming election and had rushed to trial without investigating whether physical evidence corroborated the defendant's claim that he acted in self-defense. Also, trial counsel should have delayed trial to obtain gunshot residue testing pursuant to the agreed order.

¶ 24    The State argued, on direct appeal, that the defendant's claim should have been barred under the doctrine of invited error where the record demonstrated that it was the defendant's decision to proceed to trial without the test results. In the alternative, the State claimed that proceeding to trial without the test results was a matter of trial strategy and that the defendant did not suffer prejudice where there was overwhelming evidence demonstrating that the defendant had not acted in self-defense.

¶ 25    The circuit court's judgment was affirmed as the record was inadequate to determine whether additional residue testing would have had an impact on the outcome of the trial. The decision noted that the defendant had not addressed the impact of inconclusive or varying test results and found that the defendant's claim was entirely speculative based on the record presented. *Chatman*, 2019 IL App (4th) 170220-U, ¶ 84. This issue was found to be better suited for a collateral proceeding where a record could be adequately developed. *Chatman*, 2019 IL App (4th) 170220-U. Additionally, the appellate court held the defendant's claim of ineffective assistance of counsel was not barred under the doctrine of invited error.

¶ 26    The defendant filed a *pro se* postconviction petition on October 30, 2019, where he asserted ineffective assistance of trial counsel and appellate counsel. The circuit court advanced the defendant's *pro se* postconviction petition for a second stage proceeding and appointed postconviction counsel.

¶ 27    An amended postconviction petition was filed on December 1, 2020, and asserted that the defendant was denied his right to effective assistance of trial counsel. The defendant claimed that trial counsel was ineffective for failing to investigate and present evidence that McGowan was connected to the crime. Trial counsel had failed to call two witnesses, Telly Young and Harvey Johnson, who would have testified that McGowan was armed and at the residence where the crime occurred. Trial counsel additionally failed to introduce evidence that McGowan had been tested for gunshot residue and trial counsel proceeded to trial without receiving the test results. Trial counsel failed to pursue an affirmative defense of self-defense in relation to McGowan's connection to the crime. The defendant argued that trial counsel failed to question witnesses on the bullet holes, or lack of holes, in Johnson's clothing. Additionally, the defendant claimed that trial counsel rushed to trial without adequate preparation where he failed to investigate whether the gunshot residue testing had been completed; failed to address prior inconsistent statements by witnesses; and failed to file a motion to dismiss for a violation of the defendant's right to a speedy trial. An affidavit of the defendant was attached to the amended postconviction petition.

¶ 28    The defendant filed a *pro se* motion for discovery in which the defendant requested that his postconviction counsel file a motion requesting gunshot residue testing to incorporate the results into his postconviction petition. The circuit court denied the defendant's motion because he was represented by counsel and because it was the postconviction phase, "past the discovery phase."

9

¶ 29    A second amended postconviction petition was filed on January 3, 2023, and incorporated the defendant's *pro se* petition as well as the first amended petition. The defendant argued that he received ineffective assistance where counsel failed to investigate and present certain evidence and questioned the lack of bullet holes in Johnson's shirt. The defendant additionally claimed that he was deprived of due process where the State unilaterally ignored a circuit court order for forensic testing.

¶ 30    The defendant attached his affidavit to the second amended postconviction. He averred that he had informed trial counsel of potential witnesses who would have supported the defendant's claim of self-defense; trial counsel did not call those witnesses at trial; trial counsel failed to ensure that forensic testing was timely submitted and completed; trial counsel failed to adequately cross-examine witnesses; and trial counsel failed to pursue a motion to dismiss due to a speedy trial violation. The defendant also attached notarized statements from the potential witnesses for the defense, including written statements from Harvey Johnson, Telly Young, Kioshe McGowan, Michelle Sanders, and Deandre Simon, as well as a police report that contained information on the shooting incident that was reported by Aimee Kornewald.

¶ 31    A memorandum in support of the defendant's second amended petition for postconviction relief was also submitted. The defendant argued that Harvey Johnson and Young corroborated the defendant's self-defense claim and they witnessed McGowan with a firearm at the time of the shooting. Kornewald had provided conflicting statements and had told the police that she had not seen the defendant. She was unable to identify the defendant in a photo lineup on the night of the shooting. She was later able to remember the shooter's voice as the defendant's, who she had known for years. She was able to identify the defendant at trial. The defendant argued that trial counsel should have challenged Kornewald's unreliable statements and credibility.

¶ 32   The defendant additionally argued that trial counsel was ineffective for failing to challenge the witness accounts of the shooting and the scientific evidence where Johnson's shirt did not have a bullet hole, suggesting that the evidence had been tampered with and the crime scene had been contaminated. Also, the defendant argued that the State's failure to pursue court-ordered forensic testing for gunshot residue violated the defendant's right to due process. The defendant claimed that the State unilaterally cancelled the gunshot residue testing instead of waiting to see if the crime lab was able to complete the gunshot residue testing prior to the trial date. The defendant claimed that he had not withdrawn his motion for gunshot residue testing, and that he was merely willing to proceed with trial without the lab results, if they had not been processed in time. Postconviction counsel asserted that gunshot residue test results, at that point, would be unreliable as the residue would have degraded over time.

¶ 33   The State filed a motion to dismiss the defendant's second amended postconviction petition. The State argued that trial counsel was not ineffective for failing to call witnesses to testify and failing to impeach a witness, as those decisions were matters of trial strategy. The State additionally argued that the case against the defendant was strong, where witnesses had been present for the shooting; the physical evidence linked the defendant to the shooting; and the defendant was not credible.

¶ 34   The State also responded to the defendant's claim that he was denied due process where the State failed to pursue the court-ordered testing for gunshot residue. The State indicated that the items that the defendant wished to have tested for gunpowder residue still existed and had never been tested. The State argued that neither the prosecution nor the police had acted in bad faith in failing to test the items for gunshot residue. The State further argued that it never told the laboratory to stop testing. Rather, the State had asked the crime lab to prioritize items. The State argued that

11

the defendant was not prejudiced by the failure to complete the gunshot residue analysis, and, therefore, he was not denied due process.

¶ 35    The circuit court held a hearing on the motion to dismiss on July 21, 2023. The State argued that the issues pertaining to witness testimony were matters of trial strategy. The State claimed that the gunshot residue test was immaterial where there was no evidence that Johnson discharged a firearm, and if he had discharged his firearm, the evidence presented at trial demonstrated that the defendant was the aggressor. Since the defendant was the initial aggressor, his self-defense claim failed.

¶ 36    The defendant argued that the State stopped trying to process the gunshot residue after the case was set for trial. The defendant claimed a due process violation and that the circuit court was unable to consider evidence that may have favored the defendant's claim of self-defense. The gunshot residue test could have indicated that Johnson had fired a firearm within hours of the incident. The defendant additionally argued that Kornewald may have tampered with the crime scene by removing drugs and a firearm. Had the gunshot residue testing found that Johnson had fired a gun, it would have also supported the defendant's claim that Kornewald removed a firearm. The defendant additionally argued that a third stage hearing was proper to determine the credibility of the statements made by the potential witnesses.

¶ 37    The circuit court found that the defendant's self-defense claim failed where the defendant had sought out Johnson and was armed with a gun. The circuit court additionally found that the defendant could not "have your cake and eat it too." The defendant had the opportunity to continue his case, but he wanted to proceed with a trial. The circuit court additionally found that there was no bullet hole linked to Johnson firing a weapon. If the evidence had been tested, then it would have indicated that Johnson had fired a weapon within a few hours of the shooting incident, and

the circuit court considered that Johnson lived in a drug house with people who were not law-abiding citizens. The circuit court dismissed the defendant's postconviction petition. This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, the defendant argues that his postconviction petition made a substantial showing that appellate counsel was ineffective on direct appeal for failing to argue that his trial counsel operated under a conflict of interest. Alternatively, the defendant argues that his postconviction counsel provided unreasonable assistance for failing to effectively shape an ineffective assistance of appellate counsel argument, and for failing to request the gunshot reside testing that was necessary to make a substantial showing of an ineffective assistance of trial counsel claim. The defendant additionally argues that his postconviction petition made a substantial showing that his trial counsel was ineffective for failing to call and investigate several witnesses.

¶ 40    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) allows a defendant to collaterally attack a final judgment and is not a substitute for an appeal. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides a three-step process where a convicted defendant may assert a substantial denial of his or her constitutional rights which occurred in their original trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). During the first stage of postconviction proceedings, the defendant has a "low threshold" and only needs to provide sufficient facts to present the gist of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). During the second stage, the legal sufficiency of the petition is tested. *People v. Domagala*, 2013 IL 113688, ¶ 35. The State may file an answer or move to dismiss at this stage. 725 ILCS 5/122-5 (West 2024). The defendant has the burden of making a substantial showing of a constitutional violation. *Domagala*, 2013 IL 113688, ¶ 35 Evidentiary questions are not resolved

13

at this stage. *Domagala*, 2013 IL 113688, ¶ 35. The petition is dismissed if no showing is made by the defendant. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). When the petition sets forth a substantial showing of a constitutional violation, the petition advances to the third stage where the circuit court conducts an evidentiary hearing. *People v. House*, 2021 IL 125124, ¶ 17. A postconviction petition dismissal without an evidentiary hearing is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 41   Claims of ineffective assistance of counsel are governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694).

¶ 42   The right to effective assistance of counsel also includes the right to conflict-free representation from his attorney. *People v. Acevedo*, 2018 IL App (2d) 160562, ¶ 18. To establish an actual conflict of interest, the defendant is not required to prove prejudice in that the conflict contributed to the conviction. *People v. Austin M.*, 2012 IL 111194, ¶ 82. Rather, the defendant must establish that the actual conflict adversely affected counsel's performance and must identify a specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict. *People v. Yost*, 2021 IL 126187, ¶ 38. "Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest." *Yost*, 2021 IL 126187, ¶ 38.

14

¶ 43    The right to conflict-free counsel may be knowingly waived. *People v. Olinger*, 112 Ill. 2d 324, 339 (1986). To waive a conflict, a defendant must be admonished as to the existence of the conflict and its significance. *Olinger*, 112 Ill. 2d at 339.

¶ 44    Here, the defendant presented a defense of self-defense at trial and a key question at trial was whether Johnson fired upon the defendant. Trial counsel filed a motion to have exhibits examined for gunshot residue as that evidence was essential to the defendant's claim of self-defense. The gunshot residue tests were not fully completed prior to trial. On appeal, the defendant now argues that trial counsel's candidacy created an actual conflict of interest where trial counsel's personal interests of having the trial completed before his election conflicted with a continuation of the trial until the gunshot residue test results were completed.

¶ 45    A potential conflict of interest was conveyed to the circuit court and the defendant that trial counsel was running for elected office. Initially, the defendant was concerned that the trial would be delayed beyond trial counsel's election due to the gunshot residue test results. The circuit court considered that if the laboratory results were not produced by the trial date that they would "cross that bridge when and if we get there." The circuit court reserved the issue of whether the defense would be allowed to comment on the lack of a gunshot residue report in the event that the crime lab had not completed its testing by the trial date.

¶ 46    Due to the conflict created by trial counsel's candidacy, the State filed a motion *in limine* regarding a waiver of the conflict of interest. The defendant indicated that he was aware that his trial counsel was running for state's attorney and refused to formally waive any conflict due to trial counsel's candidacy. The record does not reflect that the defendant understood the significance of proceeding to trial without the results of the gunshot residue tests or any further

15

issues created by an actual conflict. Rather, the defendant believed that trial counsel's candidacy "didn't have nothing to do with my case."

¶ 47    The defendant had indicated that he did not want to delay trial. There are five decisions that ultimately belong to the defendant in a criminal case after consultation with an attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; (4) whether to submit an instruction on a lesser included offense; and (5) whether to appeal. *People v. Campbell*, 208 Ill. 2d 203, 210-11 (2003). A defendant's due process rights will not be violated if trial counsel presents a defense theory against the defendant's wishes as the defendant does not have the ultimate right to decide the defense theory presented at trial. *Campbell*, 208 Ill. 2d at 210.

¶ 48    Trial counsel proceeded to trial knowing that multiple items had not been tested for gunshot residue according to a lab report trial counsel received on September 1, 2016, multiple weeks before trial. Trial counsel was aware that the bags placed on Johnson's hands were sent to the lab and had not been tested for gunshot residue; and multiple other items had not been received or tested. Yet, trial counsel proceeded to trial without possible exculpatory evidence, which benefited trial counsel because the trial would be completed prior to his election. Neither appellate counsel on direct appeal nor postconviction counsel framed the defendant's ineffective assistance of counsel argument as an actual conflict as defendant does now on appeal.

¶ 49    The defendant additionally argues, in the alternative, that his postconviction counsel provided unreasonable assistance. A defendant is not entitled to the sixth amendment right of effective assistance of counsel in postconviction proceedings. *People v. Nesbitt*, 2023 IL App (1st) 211301, ¶ 35. The right to postconviction counsel is statutory and postconviction petitioners are entitled to the level of assistance provided by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999). The Act requires that postconviction counsel provide a "reasonable level of assistance." *Turner*,

187 Ill. 2d at 410. Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes specific duties on postconviction counsel to insure reasonable assistance is provided. "Under Rule 651(c), counsel must: (1) consult with the petitioner either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

¶ 50    Postconviction counsel failed to present an argument that appellate counsel was ineffective. Rule 651(c) requires that postconviction counsel amend the *pro se* petition as necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 51    Additionally, in *Chatman*, 2019 IL App (4th) 170220-U, ¶ 84, the defendant was directed to pursue his ineffective assistance of counsel claim, where gunshot residue was not completed prior to trial, through a collateral petition where additional testing could be performed to develop the record. Postconviction counsel did not request gunshot residue testing to further develop the defendant's claim. Postconviction counsel instead argued that the gunshot residue would have degraded over time and testing would have been fruitless. However, Rochowicz testified at trial that time, by itself, would not have had an impact on the gunshot residue samples. The State additionally indicated in its motion to dismiss the defendant's second amended postconviction petition that the samples were still available for testing.

¶ 52    "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2024). No documentation was provided to support postconviction counsel's conclusion regarding gunshot residue testing.

¶ 53    We therefore hold that postconviction counsel's performance was unreasonable and fell below the level of assistance required by Rule 651(c). The defendant must be given an opportunity to replead his postconviction petition with the benefit of reasonable assistance of counsel to shape the defendant's claims into the proper form. The circuit court will have an opportunity to evaluate the claims in the defendant's postconviction petition after new counsel amends the petition to adequately present the defendant's claims. *People v. Addison*, 2023 IL 127119, ¶ 41.

¶ 54    Finally, we note that since oral argument was held in this case, appellate counsel for the defendant has filed a motion to issue a ruling. Appellate counsel claims an inordinate delay in the issuance of an order from this court. Our review of the record, however, indicates that appellate counsel requested, and received, three extensions for the filing of the opening brief, and an additional extension for the filing of the reply brief. These extensions delayed the ready-date by over 200 days attributable to the defendant. In the future, these kinds of continuances will be scrutinized more closely so that defendant's counsel can prepare the defendant's case in a more timely manner. The motion of the defendant to issue a ruling is moot.

¶ 55                    III. CONCLUSION

¶ 56    For the reasons stated, the judgment of the circuit court of Macon County dismissing the defendant's amended postconviction petition without an evidentiary hearing is reversed. The cause is remanded to the circuit court with directions that it allow petitioner the opportunity to replead his postconviction petition with the assistance of new postconviction counsel.

¶ 57    Reversed and remanded with directions.

18